483 A.2d 777

**William Thomas FERRELL, Jr.**

v.

**STATE of Maryland.**

**No. 147, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 14, 1984.

Sherrie R. Berger, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender of Md., on brief, for appellant.

David Yuan Li, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Md., Arthur A. Marshall, Jr.,

State's Atty. for Prince George's County and Carl W. Buch-heister, Asst. State's Atty. for Prince George's County, on brief, for appellee.

Submitted before GILBERT, C.J., MOYLAN, J., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MOYLAN, Judge.

A murder defendant who testifies that he consciously directed deadly force at the murder victim, because he believed that that force was necessary to save his own life, has himself established a *prima facie* case of the decisional component of first-degree murder. The appellant, William Thomas Ferrell, Jr., was convicted by a Prince George's County jury, presided over by Judge Arthur M. Ahalt, of first-degree murder, assault with intent to murder, and two counts of illegally using a handgun. The single issue raised by the appellant on this appeal is his claim that the evidence was not legally sufficient to support a verdict of first-degree murder. More narrowly, the only challenge to the legal sufficiency of the evidence deals with the time interval between the decision to kill and the pulling of the trigger.

It is unnecessary to consider the amplitude of evidence supplied by a number of witnesses for the State that the appellant, as part of a team of street sellers of narcotics, had abundant time to make a premeditated, deliberate, and willful decision before "wasting" two troublesome buyers, wounding one with a bullet to the neck and killing the other with a bullet to the head. We are content to answer the appellant's contention by pointing out that he, ironically, supplied the *prima facie* case itself when he offered his version of the criminal episode grounded in self-defense.

The law is now clear that although a jury may seize upon such ambiguous notions as "willfulness," "deliberation," and "premeditation" to grade murders in terms of their atrocity and blameworthiness, a literal *prima facie* case as to those notions (so far as the time interval is concerned)—and, therefore, as to murder in the first de-

gree—has been made out whenever the evidence reveals a specific intent to kill. As we pointed out in *Smith v. State,* 41 Md.App. 277, 319, 398 A.2d 426 (1979):

"When dealing with murder of the specific-intent-to-kill variety, it would not appear that there is any necessary content, as an absolute matter of law, to the words. Whenever there is evidence of a specific intent to kill, it follows that there is at least a permitted inference of wilfulness, deliberation and premeditation as these terms have been liberally interpreted by latter-day case law." [1]

Chief Judge Gilbert spoke to this very subject in *Brown v. State,* 44 Md.App. 71, 78, 410 A.2d 17 (1979), "The trilogy of terms connotes the same general idea—the intention to kill. The use of all three words seems to us to serve no purpose other than to shroud the intention in an aura of redundancy so as to convey the seriousness of the matter."

■ The defense of self-defense when deadly force is employed involves the conscious decision to employ that force because of the claimed belief that it was necessary to save the assailant from death or grievous bodily harm. This is, by definition, evidence of a conscious intent to kill, coupled, of course, with the claim that the decision to kill was justified under the circumstances. The jury, in its fact-finding prerogative, is free to believe the damaging part of the testimony and to reject the self-serving part.

In the instant case, although the jury quite obviously rejected the defendant's version of what happened, the testimony of the defendant introduced legally sufficient evidence that, for what he claimed was a good reason, the defendant considered the circumstances confronting him

---

1. As to that "latter-day case law," the Maryland cases alone are legion: *Chisley v. State,* 202 Md. 87, 95 A.2d 577 (1953); *Houston v. State,* 225 Md. 403, 171 A.2d 233 (1961); *Cook v. State,* 225 Md. 603, 171 A.2d 460 (1961); *Taylor v. State,* 226 Md. 561, 174 A.2d 573 (1961); *Detoro v. State,* 227 Md. 551, 177 A.2d 847 (1962); *Martin v. State,* 228 Md. 311, 179 A.2d 865 (1962); *Leyva v. State,* 2 Md.App. 120, 123, 233 A.2d 498 (1967); *Dubs v. State,* 2 Md.App. 524, 538–539, 235 A.2d 764 (1967); *Brooks v. State,* 3 Md.App. 485, 513, 240 A.2d 114 (1968).

and concluded that it was necessary to shoot the victim in the head:

"Q.  Why did you shoot the man?

A.  Mrs. Perry, to be perfectly honest with you, I actually think that I took a life in order that my life may live.  The fellow was fairly much taller than I am.  There was two of them.  At this particular time I didn't even realize how close Mr. Hamilton or whatever the other fellows was.  Like I said, at the backward position sitting on the stoop at the Midas place, and I didn't know them, and I didn't know whether I had any help or what.  I didn't know exactly what was going on.

I do know that the fellow had his hand lodged in his pants saying that he will take what I have, and his friend does have a revolver, and I felt that my life was in danger, and when he assaulted me, I knew that my life was in danger."

◼ Thus, the defendant himself established a legally sufficient case to support the verdict of first-degree murder.  A defendant will not be heard to claim both 1) that he decided to kill in necessary self-defense and 2) that he never decided to kill.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.