500 A.2d 1050

**William Thomas FERRELL, Jr.**

v.

**STATE of Maryland.**

**No. 15, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 4, 1985.

Sherrie B. Glasser, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

William Thomas Ferrell, Jr. (Ferrell) was convicted of premeditated murder and other crimes. He appealed to the Court of Special Appeals. His appeal presented a relatively straightforward, and meritless, question of the sufficiency of the evidence with respect to premeditation. The intermediate appellate court chose to demonstrate sufficiency by using only Ferrell's testimony. *Ferrell v. State,* 60 Md. App. 459, 483 A.2d 777 (1984). This has prompted the Public Defender to petition on Ferrell's behalf for a writ of certiorari to consider the following question:

> Whether the Court of Special Appeals erred in holding that the Petitioner's assertion of the defense of "self-defense" provided proof of premeditation and thus, established sufficient evidence to convict him of first degree murder.

We granted the writ and shall affirm.

On the evening of April 10, 1982, there was a carnival on a portion of the parking lot of the Eastover Shopping Center in Prince George's County. Ferrell, then age 22, rode his moped to the Eastover lot where he encountered, by happenstance, a group of three other young men. Ferrell was previously acquainted with one of them, Shawn Hamilton (Hamilton), but had not previously met the other two, Mark Saunders (Saunders) and James Dixon (Dixon). After purchasing a six-pack of malt liquor, the four went behind a muffler shop, a freestanding building on the parking lot outside of the carnival grounds. The area was dimly illuminated by lights from the carnival. There they drank and communally smoked two or three marijuana cigarettes. During that period two other young men came up to the group. One of these was the murder victim, Michael Young (Young), accompanied by his friend, Reginald Tyrone Copeland (Copeland).

All five survivors testified. While there were some variations in the generally consistent descriptions of the crimes given by Copeland, Saunders, Dixon, and Hamilton, there

were substantial differences between their description and that given by the accused. From the testimony of the four survivors, other than Ferrell, the jury could have found the following.

As Young and Copeland were passing near the rear of the muffler shop, Hamilton called to them and offered to sell them some "herb." Hamilton had a "nickle" bag in his hand. The potential purchasers inquired if they could check the quantity and were told that it was "good." When the potential purchasers said that they would buy if it was good, Ferrell interjected himself saying, " 'If you buy it and open it regardless of what it is, you are going to pay for it.' " Young and Copeland began to walk away, and Ferrell said they should take the " 'stuff.' " Ferrell walked up behind Copeland who turned and told the former "don't walk up on me like you was going to hurt me." Ferrell replied, " 'Well, I can straighten all this out right now.' " Ferrell reached inside of his jacket and drew a loaded .38–caliber pistol from the waistband of his trousers. He held the weapon with both hands [1] and fired one shot at Copeland who had been walking backwards, away from Ferrell. Copeland estimated that he was approximately twenty-five feet from Ferrell when the shot was fired. The bullet struck Copeland in the neck. Ferrell then fired one shot at Young who, by one witness' estimate, was ten feet away from Ferrell. The shot hit Young between the eyes. Young died before he could be taken to a hospital.

Ferrell fled the scene on his moped. Within a few days he left Maryland. He was arrested in Florida in the early fall of 1982.

---

**1.** Copeland, Saunders, and Dixon each demonstrated the position assumed by Ferrell when he was firing the handgun. No detailed description of these demonstrations is in the record. Ferrell was described as standing with his feet spread, apparently for balance. We take the reference to Ferrell's holding the weapon in both hands to mean that his arms were extended and that the hand which was not directly gripping the weapon was used further to steady it while Ferrell was taking aim and firing.

Ferrell testified at trial that Young and Copeland had approached the group, seeking marijuana, and that he, Ferrell, had offered to sell them a bag from his supply. Copeland felt the bag and complained of short weight, but would not return it to Ferrell. Copeland told Ferrell that Young had a gun and that the two customers were going to take the bag without paying for it. While Ferrell was protesting, Copeland struck Ferrell, causing the latter's legs to buckle at the knees. As Ferrell was in a semikneeling position, he drew his pistol, shot Copeland and then shot Young.

The four other eyewitnesses, Copeland, Saunders, Dixon, and Hamilton, expressly denied that the major elements in Ferrell's version of the events had ever occurred. In fact, no weapon was found either on Young or at the scene. Ferrell's testimony was further contradicted by the autopsy which revealed that the path of the bullet in Young's skull was from front to back on a slightly descending angle. In addition, the State produced a witness to whom Ferrell had admitted, on two separate occasions and without sign of remorse, that he had "wasted two" persons at Eastover. Ferrell explained to that witness that " '[n]obody ain't going to take me for bad [*sic*]....' " The jury could have found that this expression meant that no one should try to be a "rough guy" with Ferrell. On the occasion of the second admission against interest, while Ferrell was admiring a .45–caliber pistol, he said that if he had had that weapon at Eastover he " 'would have wasted all of them.' "

Ferrell was convicted of murder in the first degree, of assault with intent to murder Copeland, and of using a handgun in the commission of crimes of violence. On appeal to the Court of Special Appeals Ferrell took no issue with the trial court's instructions on willfulness, deliberation, and premeditation. He questioned only the sufficiency of the evidence, and he limited that argument to the premeditation issue. His contentions were that there was no motive and that he had acted out of rash temper.

■ There was obviously sufficient evidence of premeditation, *i.e.*, of some appreciable period of time during which Ferrell, after having formed "a specific purpose and design to kill," had "full and conscious knowledge of the purpose to do so." *Chisley v. State*, 202 Md. 87, 106, 95 A.2d 577, 585–86 (1953). Ferrell announced that he would "straighten out" the situation between Hamilton and the two buyers. A proper, and indeed compelling, inference is that Ferrell at that moment intended to "straighten out" the matter by shooting the buyers. From the facts that Ferrell used both hands to aim in dim light and shot each victim above the torso, a jury could infer that he aimed for the victims' heads and intended to kill each. The period during which Ferrell was drawing, aiming, and firing his handgun at Copeland, and then aiming and firing at Young was sufficient for premeditation in the murder of Young. *See Tichnell v. State*, 287 Md. 695, 415 A.2d 830 (1980); *Wilson v. State*, 261 Md. 551, 276 A.2d 214 (1971); *Cummings v. State*, 223 Md. 606, 165 A.2d 886 (1960), *cert. denied*, 366 U.S. 922, 81 S.Ct. 1098, 6 L.Ed.2d 243 (1961). Rather than being compelled to conclude, as Ferrell contends, that a rash temper caused him to shoot, the jury could have found that the accused was motivated by a kind of machismo—by an ego which resented another person's presenting the appearance of superiority over Ferrell and his temporary companions.

■ In its opinion, the Court of Special Appeals chose to support affirmance solely on Ferrell's own testimony, quoted below. Defense counsel had asked Ferrell why he had shot Young. He replied:

I actually think that I took a life in order that my life may live. The fellow [Copeland] was fairly much taller than I am. There was two of them. At this particular time I didn't even realize how close Mr. Hamilton or whatever the other fellows was. Like I said, at the backward position sitting on the stoop at the [muffler shop], and I didn't know them, and I didn't know whether I had any help or what. I didn't know exactly what was going on.

I do know that the fellow had his hand lodged in his pants saying that he will take what I have, and his friend does have a revolver, and I felt that my life was in danger, and when he assaulted me, I knew that my life was in danger.

The Court of Special Appeals reasoned that "[t]he defense of self-defense when deadly force is employed involves the conscious decision to employ that force because of the claimed belief that it was necessary to save the assailant from death or grievous bodily harm." 60 Md.App. at 462, 483 A.2d at 779. The court referred to *Smith v. State*, 41 Md.App. 277, 398 A.2d 426 (1979) for a proposition never cited by this Court, namely that, so far as the time interval in first-degree murder is concerned, a *prima facie* case "has been made out whenever the evidence reveals a specific intent to kill." 60 Md.App. at 462, 483 A.2d at 779. The court held that Ferrell's consideration of the circumstances and his conclusion that it was necessary to shoot the victim in the head furnished sufficient evidence of premeditation where the jury had rejected his claimed justification. On the particular facts of this case that analysis was a correct basis on which to decide Ferrell's appeal, as an alternative to the more conventional analysis which we have set forth above.

There was evidence that the victims were unarmed and had made no threats of serious bodily harm against the accused. The jury obviously did not believe that Ferrell shot in self-defense. Thus, having testified to his own mental processes in consciously deciding to take the lives of Copeland and Young in order to save his own, Ferrell himself thereby furnished proof that there was an appreciable length of time after formulation of the intent to kill and before the actual killing of Young during which the deliberation element of first-degree murder was satisfied.

The intermediate appellate court's opinion in this case, however, is more expansive. Its concluding sentence reads: "A defendant will not be heard to claim both 1) that he decided to kill in necessary self-defense and 2) that he never

decided to kill." 60 Md.App. at 463, 483 A.2d at 779. That sentence, Ferrell argues, "effectively eliminates the viability of the defense of 'self-defense' in first degree murder cases." He submits that the intent element in a claim of self-defense is "the intent to do whatever act [is] necessary to save oneself from bodily harm or injury," but that the holding of the opinion is "that the assertion of self-defense necessarily is an admission of an intent to kill."

■ The Court of Special Appeals, by saying that "[t]he defense of self-defense when deadly force is employed involves the conscious decision to employ that force because of the claimed belief that it was necessary to save the assailant from death or grievous bodily harm," equated the use of deadly force in self-defense with a conscious decision to employ deadly force. That would not be right. The point is well made in *Foley v. State,* 11 Wyo. 464, 72 P. 627 (1903) which held erroneous an instruction telling the jury that the claim of self-defense presupposes that the victim was intentionally killed. The jury was told " '[i]t is plain that, when one kills another in self-defense, he intends to do it.' " *Id.* at 483, 72 P.2d at 629. The Wyoming court said:

> This statement is not supported by any presumption of law, and is not true as a matter of fact. It is perfectly evident that one may kill another in self-defense, yet without any intention or expectation that his assailant shall be killed. A blow with the fist, or any slight weapon, struck in self-defense, may result fatally, without any such intention or expectation upon the part of the one who strikes. It is not even true where a deadly weapon, such as a pistol, is used, though in such a case the evidence of an intention to kill is, of course, usually much stronger. [*Id.*]

But the question of sufficient evidence of willfulness is not an issue in this case. In the context of this case, the pithy concluding sentence to the opinion of the Court of Special Appeals presupposes a case in which (1) the accused has testified that "he decided to kill in necessary self-de-

fense," (2) the factfinder rejected the defense and convicted for premeditated murder, and (3) the murderer's appellate argument claims insufficient evidence of premeditation. Thus, in analyzing the problem, intent to kill is a given because the problem presupposes that the defendant has so testified as part of the failed defense of justification.

The difficulty with the proposition stated in the concluding sentence lies in apparently holding that legally sufficient proof of a specific intent to kill is also, universally, sufficient evidence of premeditation. Md.Code (1957, 1982 Repl. Vol.), Art. 27, § 407 in relevant part provides that "[a]ll murder which shall be perpetrated ... by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree." In many decisions beginning with *Chisley v. State, supra,* 202 Md. 87, 95 A.2d 577, and recently in *Colvin v. State,* 299 Md. 88, 472 A.2d 953 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 226, 83 L.Ed.2d 155 (1985) and in *Tichnell v. State, supra,* 287 Md. 695, 415 A.2d 830, this Court has defined the statutory terms of willfulness, deliberation, and premeditation as distinct, although closely related concepts.[2]

---

**2.** In *Chisley, supra,* 202 Md. at 106, 95 A.2d at 585–86, the Court, quoting a text on Maryland law, Hochheimer, *Crimes and Criminal Procedure* (2d ed. 1904), said:

Hochheimer ... defines "wilful" as follows: "there must be a specific purpose and design to kill;" "deliberate" is defined: "there must be full and conscious knowledge of the purpose to do so;" and, "premeditated" as: "the design must have preceded the killing by an appreciable length of time, time enough to be deliberate. In order to justify a conviction of murder in the first degree, as thus defined, the jury must find the actual intent, the fully formed purpose to kill, with so much time for deliberation and premeditation as to convince them, that this purpose is not the immediate offspring of rashness and impetuous temper and that the mind has become fully conscious of its own design." It is not necessary that deliberation and premeditation shall have been conceived or have existed for any particular length of time before the killing. Their existence must be judged from the facts of the case.

The instructions to the jury in the case now before us were based on the *Chisley* model.

Undoubtedly, in a high percentage of cases of failed self-defense in which the accused admitted a conscious decision to kill, that admission either standing alone or in conjunction with other evidence will be legally sufficient to support a conviction of premeditated murder. The result turns on the particular facts in each case. Nevertheless, under the Maryland statute and this Court's decisions premeditation is something more than forming an intent to kill. It is therefore conceptually possible for there to be a failed self-defense case in which the proof is legally sufficient to find an intent to kill although legally insufficient to find premeditation. Professor Perkins goes so far as to say that "[t]he notion that a fully formed intent is always deliberate and premeditated, no matter how short the time between the first thought of the matter and the execution of the plan, is preposterous." Perkins, *The Law of Homicide,* 36 J.Crim.L. & Criminology 391, 449 (1946).

But, as explained above, this case does not illustrate the conceptual possibility.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, WILLIAM THOMAS FERRELL, JR.*