545 A.2d 698

**Randall Paul EARP**

v.

**STATE of Maryland.**

**No. 1571, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Aug. 8, 1988.

Certiorari Granted Dec. 1, 1988.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and John McCarthy, Asst. State's

Atty. for Montgomery County on the brief, Rockville), for appellee.

Submitted before BISHOP, GARRITY and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Randall Paul Earp, appellant, was convicted at a bench trial in the Circuit Court for Montgomery County of attempted second degree murder and assault with intent to maim.[1] Having been sentenced to concurrent terms of imprisonment of 25 years and 9 years respectively, he has appealed from the judgments entered on those conviction raising two issues:

1. Did the trial judge err in finding Appellant guilty of attempted murder in the second degree on the basis of an intent to inflict, at most, grievous bodily harm upon the victim?

2. Did the trial judge err in denying Appellant's motion to exclude the testimony of State witnesses to whom the prosecutor had shown the videotaped deposition of the victim?

There is merit in the first issue, but not in the second. Accordingly, we will reverse appellant's conviction for attempted second degree murder and affirm his conviction for assault with intent to maim. We will address the issues in reverse order.

On October 31, 1985, more than one hundred people were in attendance at a Halloween party. The partygoers ran outside when they learned someone had been run over in the middle of Randolph Road. Michael Dwayne Lawrence,

---

**1.** Appellant was charged with attempted murder in the first degree, attempted murder in the second degree, assault with intent to murder, assault with intent to maim, disfigure or disable, and battery. His initial trial ended in a mistrial when the jury was unable to reach a verdict on any of the counts. At his subsequent trial, the State nol prossed the counts charging assault with intent to murder and battery and proceeded only on the attempted first degree murder, attempted second degree murder and assault with intent to maim counts.

one of the partygoers testified [2] that when he went outside he saw forty or fifty people, some using shovels and sticks, engaged in fights, while others were attacking a gold-colored Ford truck with sticks and pipes, trying to get at the driver. Lawrence ran up to the driver and asked whether his truck had struck the man in the street. The driver abruptly shifted into reverse and backed into a car. When he admitted striking the man, Lawrence grabbed the driver and pinned him against the truck while the police, who were 30 feet away, approached.

At this time, appellant grabbed Lawrence by the shoulder, turned him around and attempted to hit the driver saying, "Let me have a piece of him." Lawrence responded that only the police officer was "going to get something from him." Appellant rejoined, "Well, I'll take a piece of you." After Lawrence had turned away from appellant, he felt a punch in his back and, looking over his shoulder, saw a knife handle protruding from it. He then felt the knife being pulled down and saw it being withdrawn. After the knife had been withdrawn, appellant again lunged at Lawrence, but only managed to strike Lawrence's thumb with the knife, because, as Lawrence testified, he was able to block most of the "[a]bout ten to fifteen slices" appellant attempted. Appellant fled as the police approached.

## I.

Appellant asseverates that the trial judge erred in denying his motion *in limine* to exclude the testimony of those State's witnesses to whom the prosecutor had shown the victim's videotaped deposition.[3] Appellant argues that the trial court's denial of his motion comports with neither Md.

---

**2.** Lawrence died of cancer prior to trial. His deposition, however, had been videotaped.

**3.** The prospective witnesses were Officers Jacobs and Ehlers, Christine Garvin and David Pagan. Appellant concedes that "the error is harmful only with respect to witnesses Jacobs and Pagan. Ehlers did not testify and Garvin was present when the deposition was taken."

Rule 2–416(i) nor 4–321. Subsection (i) of Rule 2–416, which is made applicable to criminal causes by Rule 4–2 61(e), provides in part:

The attorney for the party taking the deposition ... shall take custody of the videotape ... and be responsible for its safeguarding, permit its viewing or hearing by a party or the deponent, and provide a copy of the videotape or its audio portion ..., upon the request and at the cost of a party or the deponent.

Appellant interprets the rule as merely granting authority to a party to show a videotaped deposition only to the opposing party or to the deponent. Hence, appellant contends, "counsel for either party has no right to permit a witness other than a party or the deponent to view the videotape." We disagree.

■ Md. Rule 2–416(i) does not explicitly address the issue of viewing exclusivity. We think, however, that what it does address is not only relevant to the issue, but provides the key to its resolution. While the rule designates the attorney for the party taking the deposition as the custodian of the videotape, it expressly permits viewing or hearing by a party or the deponent. The rule further directs the custodian to provide a copy of the videotape or its audio portion, upon request and at the cost of the party or the deponent. It would seem logically to follow and, therefore, we hold that the determination whether the testimony of witnesses who have viewed copies of a videotaped deposition has been rehearsed, thereby creating artificial harmony, is a matter of credibility, subject to attack on cross-examination.

■ Appellant further argues Md.Rule 2–416(i) and Md. Rule 4–321, "Exclusion of Witnesses," have a related purpose: to prevent prospective witnesses from being taught or prompted by the testimony of another. Interpreting Rule 2–416(i) as he espouses harmonizes that rule with Rule 4–321. Proceeding from this premise, appellant asserts that "the prosecutor below, by exposing his witnesses to the

actual testimony of his keywitness, actively and directly violated a sequestration rule."

We are not aware of any rule of procedure which precludes one witness from hearing the testimony of another, even at trial, in the absence of a sequestration order. *See* Md. Rule 4–321(b) and (c). As there was no sequestration order in the case *sub judice* in effect prior to trial, we hold that the trial court did not abuse its discretion in allowing the witnesses who had viewed the videotape to testify.[4] *See McCray v. State*, 305 Md. 126, 134, 501 A.2d 856 (1985), wherein the Court observed that, "it is clear that the rule contemplates an order of sequestration before any sanction for a violation of the rule may be applied."

## II.

The appellant challenges the propriety of his conviction of attempted second degree murder. He argues that the trial judge found that he harbored only an intent to do grievous bodily harm, rather than the specific intent to kill. The State argues, on the other hand, that the trial court did not expressly find the absence of a specific intent to kill. Because the trial judge acquitted the appellant of attempted first degree murder, the State concedes that "an inference may be drawn from the court's ruling and explanatory comments that the court had decided the State had failed in its burden of proving that the appellant harbored the specific intent to kill." The State postulates, however, that "an equally rational inference is that the acquittal was based upon the State's failure to prove the premeditation and deliberation requisite to a finding of attempted first degree murder."

An indispensable element of attempted murder, be

---

**4.** We think it appropriate to note that Rule 4–321 does not preclude a party from moving for a sequestration order at or before the taking of a videotaped deposition to preserve testimony. Had appellant done so in this case, this issue would probably have been avoided.

it first or second degree,[5] and the separate crime of assault with intent to murder, *see State v. Holmes*, 310 Md. 260, 272, 528 A.2d 1279 (1987), is the intent to murder. *Id. See also State v. Jenkins*, 307 Md. 501, 515, 515 A.2d 465 (1986), *Glenn v. State*, 68 Md.App. 379, 388, 511 A.2d 1110, *cert. denied*, 307 Md. 599, 516 A.2d 569 (1986). And, although by application of the aggravating factors prescribed in Maryland Code Ann. art. 27, §§ 407–410, an accused may be convicted of murder upon proof of an intent other than the specific intent to kill, *Glenn*, 68 Md.App. at 388, 511 A.2d 1110, when the victim does not die, a necessary ingredient of the intent to murder is a specific intent to kill. *Id.*, 68 Md.App. at 388–89, 389–90, 511 A.2d 1110. This is so because:

> Of the four basic types of murder, specific-intent-to-kill murder is the only one wherein there is a conscious and purposeful design to accomplish the death of the victim. None of the others contains, as a necessary element, any intent that the victim die. A depraved-heart murder is a mere general intent crime—the general intent to do the reckless, life-endangering act with wanton disregard of the human consequences. A felony-murder has no necessary specific intent that harm should come to a victim, let alone that the victim should die. There is merely a general intent to perpetrate a felony. Some felonies, of course, include lesser specific intents, but not an intent that death result. With respect to both depraved-heart murder and felony-murder, the death of the victim is not only unintended but sometimes not even reasonably foreseen.

> \*        \*        \*        \*        \*        \*

> In the case of intent-to-do-grievous-bodily-harm murder, on the other hand, the failure of that intent to establish

---

5. In *Campbell v. State*, 293 Md. 438, 441, 444 A.2d 1034 (1982), the Court of Appeals pointed out that the effect of the enactment of Maryland Code Ann. art. 27, §§ 407–410 was merely to divide the common law crime of murder into degrees and not to create new statutory crimes or, in any way, to affect its definition.

*ipso facto*—by automatic operation of law—the intent to murder is not so immediately apparent. This is so because there is, in these cases, an actual harm specifically intended for the assault victim. Thus, this form of murder is a specific-intent crime rather than a mere general-intent crime. The critical distinction that needs to be made, however, is between *the results specifically intended,* not *between the presence or absence of a specific intent.* Although there is the purpose or design that the victim should suffer serious physical harm, there is no necessary purpose or design that the victim should die. (Emphasis in original)

*Id.* Thus, attempted murder is committed only when the perpetrator intended to commit murder. In other words, "one can intend only that type of murder which if done, would be intentional. It is a truism that one cannot intend the unintended." *Glenn,* 68 Md.App. at 397, 511 A.2d 1110.

■ A conviction for attempted second degree murder may not be sustained upon proof that the accused intended only to commit grievous bodily harm; a conviction for attempted second degree murder may only be sustained if the perpetrator is found to have harbored the intent to kill his victim.

Our first task is to determine what the trial judge found. We do so by reviewing what he said in rendering his decision. Addressing appellant, the court stated:

With respect to Count four, the assault with intent to maim, the Court finds that the State has carried its burden of proof with respect to that count and finds you guilty.

With respect to Count two, attempted murder in the second degree, the court finds that the State has carried its burden of proof with respect to that count, and finds you guilty of attempted second degree murder.

I cite for you, Mr. DeWolfe [defense counsel], the case of

State versus Davis,[6] in which they draw the distinction between second degree murder and first degree murder, and I think you are right with respect to the premeditation, deliberation. In the first degree case, you must find that there was a specific intent to kill.

With respect to the first count of this indictment, attempted first degree—murder in the first degree, I find that the inference is insufficient in this case and does not convince the Court beyond a reasonable doubt that the State has carried its burden with respect to attempted murder in the first degree, and I find the Defendant not guilty of the first count.

The court's findings were clarified during a later colloquy with defense counsel. In response to defense counsel's request for clarification of its ruling, specifically, whether it had found that the only necessary intent to support attempted second degree murder was an intent to cause serious bodily harm, the court said, "In second degree murder. It is in the disjunctive, it says or— . . .—to kill or do—inflict serious bodily harm, which could result in death." The court cited *Davis v. State*, 237 Md. at 104, 205 A.2d 254 in support of that statement:

The appellant contends that there was no real evidence of malice and that it was prejudicial error for the trial court to deny his motions for a directed verdict of acquittal as to murder. We do not agree. An actual intent to take life is not necessary for a conviction of murder if the intent is to commit grievous bodily harm and death occurred in consequence of the attack. *Webb v. State*, 201 Md. 158, 93 A.2d 80 (1952). The nature of the injuries inflicted upon Farmer of itself was evidence of malice for the jury's consideration. Wharton, *The Law of Homicide*

**6.** Although the court cited to *State v. Davis*, it is apparent that it intended to refer either to *Davis v. State*, 237 Md. 97, 205 A.2d 254 (1964) or *Davis v. State*, 204 Md. 44, 102 A.2d 816 (1954). In light of the subsequent reference to the later *Davis* case in colloquy with defense counsel, it is probable that it was that case upon which the court relied.

§ 95 (3d ed. 1907). The brutality and severity of a beating are evidence of an intent to commit a homicide. *Morrison v. State*, 234 Md. 87, 198 A.2d 246 (1964).

It is clear from the foregoing that the trial court determined that the only intent necessary to support appellant's conviction of attempted second degree murder was the intent to do grievous bodily harm: The court, in addition to referring to deliberation and premeditation, acknowledged that attempted first degree murder requires an intent to kill; the court's response to defense counsel's request for clarification implied that either an intent to kill or an intent to commit grievous bodily harm would support a conviction of attempted second degree murder; aside from the sufficiency of the evidence, the only dispute at trial was whether attempted second degree murder could be found on proof of an intent less than the intent to kill; had the trial court found an intent to kill, it need not have concerned itself with alternative intents.

There is absolutely no issue in this case as to the sufficiency of the evidence to have sustained a finding of a specific intent to kill on the part of appellant. Indeed, the evidence produced by the State overwhelmingly supports such a finding. Unfortunately, the trial court did not see it that way; on the contrary, it found either that appellant did not have the intent to kill or that it had a reasonable doubt on the issue, but, misinterpreting precedent from the Court of Appeals, nevertheless found, on the basis of its finding of an intent to do grievous bodily harm, the evidence to be sufficient to support a conviction for attempted second degree murder. In so doing, the lower court erred.

We have no quarrel with the propositions espoused by the State: an intent to kill certainly could have been inferred by the trial court, *see Jenkins*, 307 Md. at 513–15, 515 A.2d 465; *Davis v. State*, 237 Md. at 103, 205 A.2d 254, *Davis v. State*, 204 Md. at 52, 102 A.2d 816; *Glenn*, 68 Md.App. at 410, 511 A.2d 1110, and a failure of proof of deliberation and premeditation does not preclude a

finding by the trier of fact of an intent to kill. *See Ferrell v. State,* 304 Md. 679, 688, 500 A.2d 1050 (1985). We quarrel only with the applicability of those propositions to the case *sub judice.* The court neither inferred the intent to kill from the circumstances nor considered deliberation and premeditation apart from the intent to kill. Here, as we have previously pointed out, the court found that the accused either had no intent to kill or that it had a reasonable doubt as to whether the accused harbored such an intent. Therefore, the fact that the evidence is legally sufficient to support a contrary finding, *i.e.,* that the accused possessed an intent to kill, is simply irrelevant and immaterial.[7]

JUDGMENT AS TO ATTEMPTED SECOND DEGREE MURDER REVERSED; JUDGMENT AS TO ASSAULT WITH INTENT TO MAIM, AFFIRMED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY MONTGOMERY COUNTY.

GARRITY, J., dissents.

GARRITY, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the trial judge found evidence of an intent merely to commit grievous bodily harm rather than finding evidence sufficient from which to infer an intent to kill. In explaining my interpretation of the court's finding, it is necessary to briefly revisit the law relating to attempted murder in the second degree.

---

7. The dissent perceives the court's finding to be that "although the evidence failed to show premeditation and deliberation so as to support a conviction of attempted first degree murder, the evidence was sufficient to establish malice, so that, if death had followed the assault, the offense would have been murder in the second degree." It finds relevant to its position the proposition that "the intent to commit grievous bodily harm (which could result in death) serves as a legally sufficient predicate to support the inference of a murderous *mens rea.*" This position entirely misses the point.

The common-law crime of attempt is generally defined as the intent to commit a crime, coupled with some overt act beyond mere preparation in furtherance of that crime. *Wiley v. State*, 237 Md. 560, 207 A.2d 478 (1965). In analyzing the crime of attempted murder in the second degree, Judge Cole observed on behalf of the Court in *Hardy v. State*, 301 Md. 124, 482 A.2d 474 (1984):

> The crime of attempt, in a literal sense, is an adjunct crime—it cannot exist by itself, but only in connection with another crime. Although it remains a common-law crime, attempt is applicable to any existing crime, statutory or common law.... The crime of attempt by definition expands and contracts and is redefined commensurate with the substantive offense.
>
> If the evidence satisfied the fact finder by proof beyond a reasonable doubt that the conduct of the defendant falls within the proscribed conduct in the statute labeled as first degree murder that did not result in death of the victim, then the crime of attempted murder in the first degree has been established. If the evidence of criminal culpability is something less, the crime proved may be attempted murder in the second degree or attempted voluntary manslaughter. We emphasize that the basic characteristic of an attempt is that it adjusts according to the proof established at trial.

*Id.* at 139–140, 482 A.2d 474.

In *Glenn v. State*, 68 Md.App. at 385, 511 A.2d 1110, this court enumerated the four types of murder, each of which has its own *mens rea,* as: intent to kill murder; intent to commit grievous bodily harm murder; felony murder; and depraved heart murder. Judge Moylan, writing on our behalf, explained:

> The presence of one of these intents is an indispensable ingredient, although not the only necessary ingredient, of that slippery legal concept known as "malice." Indeed, the text writers have for 300 years referred to the original murderous *mens rea*—the intent to kill—as "express malice." They have also referred to the latter three

murderous *mentes reae*—all of which came into homicide law during its rapid evolution in the early seventeenth century—as the three forms of "implied malice." The original legal fiction, of course, was that any of the latter three states of mind "implied" the former; proof of any of the latter three intents was a predicate fact from which the factfinder could permissibly infer the intent to kill. Legal analysis has now reached a point of sophistication, however, where we recognize that each of these four intents is independently blameworthy enough to support a murder conviction. Each is an autonomous murderous *mens rea* in its own right and not a mere evidentiary avenue to one of the others.

*Id.* (Footnote omitted).

Relevant to the instant case is the principle that the intent to commit grievous bodily harm (which could result in death) serves as a legally sufficient predicate to support the inference of a murderous *mens rea.*

In post trial discussion, the trial judge explained that he had based his finding of guilt as to attempted second degree murder on the law of homicide as explicated in *Davis v. State,* 237 Md. 97, 205 A.2d 254 (1964), wherein the victim had died following a vicious fight. In affirming the judgment, the Court observed that the brutality and severity of a beating are evidence of an intent to commit a homicide."

The majority acknowledge that the trial judge in the case *sub judice* relied on the principles enunciated in *Davis* as rationale for his finding the appellant guilty of attempted second degree murder. The majority, however, then completely ignore the inference of malice permitted under *Davis* and conclude "[i]t is clear from the foregoing that the trial court determined that the only intent necessary to support appellant's conviction of attempted second degree murder was the intent to do grievous bodily harm...."

As observed by Judge Hammond in *Davis v. State,* 204 Md. 44, 51, 102 A.2d 816 (1954), an assault with intent to murder case wherein the Court remanded upon the refusal

of the trial court to instruct on the existence of malice as a predicate to finding an intent to murder, as opposed to its absence, which would indicate manslaughter:

[M]alice exists not only when there is an actual, express intent to kill, but may be inferred when there is an intent to do or inflict great bodily harm, or when one wilfully does an act or wilfully fails to do a duty and the natural tendency of the act or failure is to cause death or great bodily harm.

Since intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence. Malice and, so intent to murder, may be inferred from all the facts and circumstances of the occurrence. The deliberate selection and use of a deadly weapon directed at a vital part of the body is a circumstance which indicates a design to kill, since in the absence of evidence to the contrary, the law presumes that one intends the natural and probable consequences of his act.

The testimony established that the appellant had stabbed his victim in the back, inflicting a wound three centimeters in length and six centimeters in depth. According to the examining physician, a stab wound that extends into the chest cavity creates a potential for hemorrhaging which, if not staunched, could be fatal. Only the protection afforded by the victim's shoulder blade prevented further penetration of the knife. In addition, when Lawrence turned, the appellant repeatedly attempted to slash him. The assaults ended only with the arrival of the police.

I think it is clear that the trial judge determined that although the evidence failed to establish premeditation and deliberation so as to support a conviction of attempted first degree murder, the evidence was sufficient to establish malice, *a fortiori*, an inference of a murderous *mens rea*, so that, if death had followed the assault, the offense would have been murder in the second degree. I would affirm the judgment.