636 A.2d 994

**Robert Patrick LIPINSKI**

v.

**STATE of Maryland.**

**No. 82, Sept. Term, 1993.**

Court of Appeals of Maryland.

Feb. 7, 1994.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and RODOWSKY, CHASANOW, KARWACKI, ROBERT M. BELL, and RAKER, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

## I

Robert Patrick Lipinski does not dispute that he killed Eugenia Courtalis. The State does not dispute that the judgment entered against Lipinski is flawed because the Circuit Court for Baltimore County, which found Lipinski guilty of murder in the first degree, gave a definition of "deliberate and premeditated" at odds with the meaning of that phrase as amplified by us in *Willey v. State*, 328 Md. 126, 613 A.2d 956 (1992), some nine months after Lipinski's trial.[1] The question

---

1. Lipinski was tried under a one count indictment which presented that he "feloniously, willfully and of deliberately premeditated malice afore-thought did kill and murder one Eugenia Courtalis...."

   Md.Code (1957, 1992 Repl.Vol.) Art. 27, § 407, provides:
   All murder which shall be perpetrated ... by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree.
   The Legislature has designated certain other murders to be in the first degree. *See* Art. 27, §§ 408, 409 and 410.
   All other kinds of murder shall be deemed murder in the second degree.

is what sanction is to be applied because of the trial court's error. Lipinski insists that he is entitled to a new trial. The State urges that the proper sanction is that mandated by the Court of Special Appeals, namely that the judgment be vacated and the case remanded "to allow the trial judge to consider the evidence in accordance with the standard enunciated ... in *Willey* ... as to whether [Lipinski] acted with premeditation and deliberation." *Lipinski v. State*, 95 Md.App. 450, 459, 622 A.2d 145 (1993).

Lipinski filed a petition for a writ of certiorari in which he presented two questions:

1. Is a new trial required where a trial judge applies an erroneous definition of the crime in finding a defendant guilty in a non-jury trial?

2. Is the evidence insufficient to sustain a conviction for first degree murder?

The State filed a cross-petition asking:

Did the trial court apply the correct definition of first degree murder to the facts?

We granted Lipinski's petition and ordered that a writ of certiorari to the Court of Special Appeals shall issue limited solely to a review of the first question presented by him. We denied the cross-petition.

## II

The State and Lipinski agreed that the evidence adduced at the trial was as presented in the opinion of the Court of Special Appeals. The intermediate appellate court set out verbatim a statement given by Lipinski to the police. *See Lipinski*, 95 Md.App. at 451–456, 622 A.2d 145. We summarize the statement.

Courtalis was employed by the Nutri–System Weight Loss Center at its Towson office. Lipinski was an employee of a

---

Art. 27, § 411. *See State v. Hawkins*, 326 Md. 270, 281, 604 A.2d 489 (1992); *State v. Frye*, 283 Md. 709, 712, 393 A.2d 1372 (1978); *Newton v. State*, 280 Md. 260, 268, 373 A.2d 262 (1977).

cleaning service and was assigned to clean that office. He went there on Saturday, 1 June 1991, to perform his duties. He knocked on the door and was told by Courtalis that the place was closed. He explained why he was there. She reluctantly admitted him. She resented the fact that she had to stay until he was finished with his chores and nagged him incessantly to hurry up so she could leave. The situation finally reached the point where, according to Lipinski, "I just couldn't take it anymore. I just snapped."

"I had been under a lot of pressure lately working long odd hours to support my family, looking for a new place to live after our landlord advised us the[y] were not going to renew our lease due to a family crisis. I just didn't have enough time in each day to do everything I had to do. I was in just as much of a hurry to get out of there as she was. By this time I was tired from lack of sleep and worrying about where me and my family were going to live. With everything that was going on I was tired of it all her bitching at me to get done didn't help."

95 Md.App. at 453, 622 A.2d 145. He grabbed her by the arm, took a "butterfly" knife out of his pocket and stabbed her a number of times.

The autopsy revealed that she had been stabbed twice in the chest and ten times in the back. The chest wounds were not fatal, but the wounds in the back caused her death. One penetrated Courtalis's heart, one her lung, and one her liver. The medical examiner opined, because of the clustering orientation of the back wounds, that

the deceased was probably stabbed in the front of the chest, collapsed and then stabbed in the back. The medical examiner concluded that the type of back wounds inflicted indicated a lack of struggle on the part of the victim, that the clustering of the wounds indicated violence or rage, and that the wounds were inflicted one after another in rapid succession.

Id. at 452, 622 A.2d 145. Lipinski said that he "didn't mean for this to happen. I just hit a breaking point." He tore the

telephone lines off the wall, washed some blood off his hands, gathered up his cleaning utensils, got into his car and went straight home. *Id.* at 454, 622 A.2d 145. Lipinski told the police that

"I cannot to this day believe that I could do something like that."

*Id.* at 456, 622 A.2d 145. "[I]t just got to a point," he said, "where I didn't realize what I·was doing." *Id.*

### III

### A

In announcing his verdict, the trial judge said the question was, "[I]s this murder in the first degree or is this a murder in the second degree?" He observed:

The differentiation between murder in the first degree and murder in the second degree has been a traditional one in Maryland for literally hundreds of years. In law school we learned that the difference between first degree and second degree murder was the element of premeditation. That was the word, the term that was the key in understanding whether a murder was first degree or second degree.

. . . . .

The question in this case is, is there evidence that this killing was willful, intentional and deliberate. And we can add the word premeditated, as that means willful and deliberate and with fully formed purpose before the killing.

He noted, "There is no question that the lay person's definition of premeditation is not what the law really talks about.

Most lay people think when you talk about premeditation, that one sat and thought and contemplated and decided and then went out and did an act based on that thought and decision. There have been a number of Maryland cases that say that there is premeditation that occurs in an

instant, literally an instant. It's whether the decision to kill has been made before the killing.

The judge continued:

There are cases that talk about that decision being formed literally in an instant. In less than a second. One thought following the other, the law says. There are cases that support the proposition that premeditation, this deliberate intention to kill, the decision, the fully formed decision being made in very short, in a very short period in time.

The judge concluded:

The physical evidence supports the conclusion that the intention of the Defendant, his intention in both pulling out the knife and in the number of wounds, the location of the wounds, the location of where the wounds were struck, in the location, in the physical office, indicates to this Court that the Defendant formed in his mind before he struck the fatal blow the fully formed purpose to kill the victim.

Therefore, the judge held, Lipinski "is guilty of murder in the first degree, and the Court so finds beyond a reasonable doubt."

The judge's concept of the law was substantially the view at the time. He relied primarily on *Smith v. State,* 41 Md.App. 277, 398 A.2d 426, *cert. denied,* 284 Md. 748 (1979), which he interpreted as stating:

[W]e don't think the word premeditated today means, of necessity, anything more than having made the choice to kill, a notion already conveyed by the specific intent to kill itself, and conveyed even beyond theoretical argument by the addition of the adjective deliberate.

### B

We decided *Willey v. State,* 328 Md. 126, 613 A.2d 956, on 13 October 1992. An issue was whether the murder was in the first degree or second degree. Willey was found guilty by a jury of murder in the first degree. The trial judge instructed the jury in accord with the Maryland Criminal Pattern

Jury Instructions.[2] Willey complained that the instruction failed to point out to the jury any difference between first degree murder and the intent-to-kill variety of second degree murder, 328 Md. at 132, 613 A.2d 956. We assumed that Willey had raised below the distinction between an impulsive versus a reflective intent. *Id.* Judge Chasanow, writing for the Court, made a thorough analysis of our opinions and the view of legal scholars on the matter. *Id.* at 132–137, 613 A.2d 956. We concluded:

> [T]he instruction given is not out of sync with our wealth of caselaw on premeditation and deliberation, and paying deference to those cases, we find no reversible error in giving the instruction.

*Id.* at 137, 613 A.2d 956. Although we held that the instruction was not erroneous, we declared that "it should be amplified." *Id.* at 138, 613 A.2d 956. We acknowledged that some of our cases upon which this instruction may have been based have virtually obliterated the fine and often

---

2. Maryland Pattern Jury Instructions—Criminal 4:17 A (1986) states:
   First degree murder is the intentional killing of another person with wilfulness, deliberation and premeditation. In order to convict the defendant of first degree murder, the State must prove:
   (1) that the conduct of the defendant caused the death of *(victim);* and
   (2) that the killing was wilful, deliberate and premeditated.
   Wilful means that the defendant actually intended to kill the victim. Deliberate means that the defendant was conscious of the intent to kill. Premeditated means that the defendant thought about the killing and that there was time, though it need only have been brief, for the defendant to form the intent to kill. The premeditated intent to kill must be formed before the killing.
   MPJI–Cr 4:17 B reads:
   Second degree murder is the killing of another person with either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result. Second degree murder does not require premeditation or deliberation. In order to convict the defendant of second degree murder, the State must prove:
   (1) that the conduct of the defendant caused the death of *(victim);* and
   (2) that the defendant engaged in the deadly conduct either with the intent to kill or with the intent to inflict such serious bodily harm that death would be the likely result.

difficult distinction between first degree murder and the intent-to-kill variety of second degree murder.

*Id.* We proclaimed our belief that "it would be preferable, especially where the distinction is clearly at issue,"

for the trial court to emphasize that in order for the jury to conclude that the defendant premeditated the killing it must find that the defendant had sufficient time to consider the decision whether or not to kill and weigh the reasons for or against such a choice.

*Id.* We observed:

Movement in this direction would be consistent with the developing trend of courts and commentators to focus more attention upon, and more clearly define, the distinct mental states involved in first versus second degree murder.

*Id.* We quoted 2 W. LaFave & A. Scott, Jr., *Substantive Criminal Law* § 7.7, at 237 (1986), adding emphasis and omitting footnotes:

"It is often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds,' and convictions for first degree murder have frequently been affirmed where such short periods of time were involved. *The better view, however, is that to 'speak of premeditation and deliberation which are instantaneous, or which take no appreciable time, * * * destroys the statutory distinction between first and second degree murder,' and* (in much the same way that the felony-murder rule is being increasingly limited) *this view is growing in popularity.*"

*Willey,* 328 Md. at 138, 613 A.2d 956. Professor Perkins went so far as to say:

[t]he notion that a fully formed intent is always deliberate and premeditated, no matter how short the time between the first thought of the matter and the execution of the plan, is preposterous.

Perkins, *The Law of Homicide,* 36 J.Crim.L. & Criminology 391, 449 (1946). We quoted this comment by Professor Perkins in *Ferrell v. State,* 304 Md. 679, 688, 500 A.2d 1050 (1985) and referred to *Ferrell*'s quotation of it in *Willey,* 328 Md. at

141, 613 A.2d 956.  We said in *Willey* that "we do not cast off the moorings of established law," but we emphasized that "the judiciary would do well to clarify, rather than minimize, the existing distinctions between Maryland's two degrees of intent to kill murder." *Id.*

■ The judge in the case at hand minimized the distinctions between first degree murder and second degree murder. He spoke of premeditation in terms of the intent to kill "being formed literally in an instant. In less than a second. One thought [the intent to kill] following the other [the act of killing]...."  He noted that there are cases that

> support the proposition that premeditation, this deliberate intention to kill, the decision, the fully formed decision being made in very short, in a very short period in time.

When the trial judge described "premeditation" he did not have the advantage of the cautions of *Willey*.  But we denied the State's cross-petition wherein it requested us to review whether the trial judge applied the correct definition of murder in the first degree.  The State has proceeded before us "on the assumption that the trial court's analysis of the law was erroneous."

## IV

■ We do not agree with the determination of the Court of Special Appeals set out in 95 Md.App. at 459, 622 A.2d 145 that the case shall be remanded to the Circuit Court for Baltimore County with direction that the trial court "consider the evidence in accordance with the standard enunciated ... in *Willey* ..., as to whether [Lipinski] acted with premeditation and deliberation."  We note that the intermediate appellate court did not specify what the trial court should do if it found that the homicide was not premeditated and deliberate, and it did not cite to any authority for its remand directive.

The State suggests that if we find that the directive of the Court of Special Appeals on remand is inappropriate,

> the State should have the option to retry Lipinski on the first degree murder charge or to ask the trial court to

impose a conviction on the second degree murder charge, given that it was uncontested below that he was at least guilty of that crime and the error by the trial court, regarding the concepts of premeditation and deliberation had no effect on its finding that Lipinski intended to kill the victim without justification, mitigation, or excuse.

The statement by the State that "it was uncontested below that [Lipinski] was guilty of [second degree murder]" apparently was prompted by defense counsel's request to the judge after arguing that the homicide was not premeditated. He said:

> Judge, I ask the Court to find Mr. Lipinski, and I guess it's kind of unusual for a defense lawyer to stand up and say this, but I ask you to find him not guilty of murder in the first degree. I don't think the evidence supports it. Thank you.

We believe that the proceeding directed by the Court of Special Appeals on remand is inappropriate.

Md. Rule 8–604(d) provides, in relevant part:

> If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand.

The Rule states that

> [u]pon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

We explicated Rule 1071, which along with Rule 871 became in substance Rule 8–604(d), in *Gill v. State,* 265 Md. 350, 357, 289 A.2d 575 (1972). We held that while the Rule

> may be suitable to correct procedures subsidiary to the criminal trial, it can never be utilized to rectify prejudicial errors committed during the trial itself.

We applied *Gill's* holding in *Lodowski v. State,* 307 Md. 233, 258, 513 A.2d 299 (1986) and it stands viable today.[3]  Here, the definition by the judge of the crime charged was not subsidiary to the criminal trial.  The court's analysis of the crime of premeditated murder was prejudicially erroneous, and the error was committed during the trial itself.  Rule 8–604(d) may not be utilized to rectify that error.

We think that the suggestion of the State is, in the circumstances of the case before us, appropriate, feasible, practical, reasonable, and in the interest of justice.  We adopt the State's suggestion, even though we find no appellate case in Maryland which followed the procedure suggested by the State nor is such procedure in widespread use in other jurisdictions.  On the remand the State shall have the option of trying Lipinski anew on the premeditated murder charge, or requesting the trial court to enter a verdict of murder in the second degree and to impose sentence accordingly.[4]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH DIRECTION TO VACATE ITS JUDGMENT AND TO ENTERTAIN

---

**3.**  We have permitted limited remands in certain instances.  *See e.g. Reid v. State,* 305 Md. 9, 501 A.2d 436 (1985) (limited remand to determine authenticity of two letters submitted by death penalty defendant as to his good character); *Bailey v. State,* 303 Md. 650, 496 A.2d 665 (1985) (discovery violation); *Warrick v. State,* 302 Md. 162, 486 A.2d 189 (1985) (discovery violation); *Mahammitt v. State,* 299 Md. 82, 472 A.2d 477 (1984) (180 day rule); *Wiener v. State,* 290 Md. 425, 430 A.2d 588 (1981) (determination as to whether defendant received effective assistance of counsel).
*Lodowski v. State,* 307 Md. 233, 258 n. 3, 513 A.2d 299 (1986).

**4.**  We point out that if the State opts for a new trial on the premeditated murder charge, possible verdicts are guilty of murder in the first degree, or guilty of murder in the second degree, or not guilty of murder but guilty of manslaughter, or not guilty.  *See Hardy v. State,* 301 Md. 124, 137–138, 482 A.2d 474 (1984).  Evidence legally sufficient to sustain a verdict of guilty of premeditated murder is *ipso facto* legally sufficient to sustain a verdict of guilty of murder in the second degree.

FURTHER PROCEEDINGS PURSUANT TO THIS OPINION;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.