589 A.2d 114

**William Delane DAVIDSON**

v.

**STATE of Maryland.**

**No. 745, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 2, 1991.

John L. Kopolow, Asst. Public Defender, Stephen E. Harris, Public Defender, on brief, Baltimore, for appellant.

Tarra Deshields–Minnis, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on brief, for appellee.

Submitted before MOYLAN, GARRITY and CATHELL, JJ.

GARRITY, Judge.

William Delane Davidson, the appellant, was convicted by a jury in the Circuit Court for Prince George's County of first-degree rape, kidnapping, and use of a handgun in the commission of a crime of violence. The sole question presented on appeal is whether the court erred in denying the appellant's motion to dismiss the charges against him on the ground that he was denied his constitutional right to a speedy trial.

## I.

The pertinent facts in this case can be summarized by the following chronology:

*December 15, 1982*—The Grand Jury returns an indictment charging the appellant with committing the crimes in this case on October 11, 1982. Because the appellant is incarcerated in the District of Columbia awaiting trial on charges pending in that jurisdiction, the court orders that a Bench Warrant issue as a detainer.

*December 21, 1982*—The Bench Warrant is issued. It states on its face: "LODGE AS DETAINER—DEFENDANT INCARCERATED IN D.C. JAIL Please notify Det. Walter upon service."

*December 30, 1982*—The court refers the case to the Office of the Public Defender.

*January 10, 1983*—The Office of the Public Defender files a "Line" indicating that it will not enter its appearance "at the present time ... pending the issuance of a Writ to bring defendant here so that he may be interviewed."

*July 27, 1983*—At the State's request, the court places the case on "INACTIVE STATUS," the Bench Warrant to remain outstanding.

*July, 1984*—The appellant is sentenced in the District of Columbia.

*June or July, 1989*—The Sheriff's Office receives a letter from the United States Penitentiary in Lewisburg, Pennsylvania, described by a witness [1] as follows:

> That's this detainer action letter sent to us from the United States Penitentiary on June 28, 1989, and it tells us that they are in receipt of a report indicating that we have outstanding charges against Mr. Davidson and informing, advising us to file a formal detainer with them.

---

1. Although the letter itself was entered as an exhibit in this case, it is not included as a part of the record on appeal. The parties agree that its omission is through no fault of the appellant and that the witness's description is sufficient for purposes of our review.

*September 26, 1989*—The State requests temporary custody of the appellant from the Lewisburg Penitentiary pursuant to the Interstate Agreement on Detainers.

*December 29, 1989*—The appellant files a *pro se* Petition for a Writ of Habeas Corpus that the court accepts for filing as a Motion to Dismiss for Lack of Speedy Trial.

*January 10, 1990*—The appellant is arraigned and referred to the Public Defender.

*January 25, 1990*—An Assistant Public Defender enters his appearance on behalf of the appellant.

*April 9, 1990*—The court conducts a hearing on the motion to dismiss:

An employee of the Sheriff's Office testified as follows: On November 2, 1982, the Sheriff's Office sent a detainer letter to the D.C. Metropolitan Police Fugitive Squad based upon charging documents filed against the appellant in the District Court. On January 3, 1983, they sent another detainer letter as a result of the indictment returned on the previously filed District Court charges. Although the D.C. officials "normally" acknowledge receipt of detainer letters, there is no record that any such acknowledgement was received in this case. When a detainer has been lodged against a prisoner in the custody of D.C. and federal officials, and he is moved from one facility to another, the institution to which he is transferred "customarily" sends notification to the Sheriff's Office "that the detainer has followed him." No such notification was received in this case. The Sheriff's Office did not learn of the appellant's whereabouts until it received the letter from Lewisburg. The Sheriff's Office has made no provision for following up detainer action letters for which no acknowledgment has been received.

A former employee of the State's Attorney's Office testified as follows: When the State's Attorney's Office is notified by the Sheriff that a detainer has been lodged against a prisoner in a foreign jurisdiction, contact is made with that jurisdiction to determine whether the prisoner is

awaiting trial or serving a sentence. If he is awaiting trial, a "suspense file" is created to monitor his status monthly until he is sentenced, at which time temporary custody is requested under the Interstate Agreement on Detainers. The former employee had no present recollection of whether a suspense file had been created in this case.

A present employee testified that the State's Attorney's Office had no record of anything in this case until August 9, 1989, when they learned from the Sheriff that the letter from Lewisburg was received.

The appellant did not testify, but his counsel made the following proffers: The appellant was sentenced in July of 1984 and transferred from the D.C. jail to Lorton. In December of 1988, he was sent to Spokane, Washington. In June of 1989, he was transferred to Lewisburg, Pennsylvania, where he found out about the pending charges in this case. Defense counsel also proffered: "At this point my client is completely unable to tell me what he was doing, who might have been around to provide any type of alibi witnesses as far as the date and time in question. He simply has no recollection of that time and since he only received the full—he only recently through discovery in this case received the full information on the case...."

The court denied the motion to dismiss and proceeded to trial.

## II.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const.Amend. VI.

In *Barker v. Wingo,* 407 U.S. 514, 519, 92 S.Ct. 2182, 2186, 33 L.Ed.2d 101 (1972), the Supreme Court observed:

The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in

providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. Noting that "the right to a speedy trial is a more vague concept than other procedural rights," the Court pointed out that it is "impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." 407 U.S. at 521, 92 S.Ct. at 2187 (footnote omitted). Because of the "amorphous" and "slippery" nature of the right, 407 U.S. at 522, 92 S.Ct. at 2188, the Court rejected both of the inflexible approaches to determining when the right has been denied: "the fixed-time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which we have deemed fundamental." 407 U.S. at 529–30, 92 S.Ct. at 2191. Instead, the Court adopted "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* (footnote omitted).

A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Id.* (footnote omitted). The Court added a caveat, 407 U.S. at 533, 92 S.Ct. at 2193 (footnote omitted):

We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full

recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

## III.

### *Length of Delay*

Although "[t]he speedy trial clock starts ticking when a person is arrested or when a formal charge is filed against him," *State v. Bailey,* 319 Md. 392, 410, 572 A.2d 544 (1990), and stops ticking when the case is tried, *see Epps v. State,* 276 Md. 96, 109, 345 A.2d 62 (1975), we can quickly narrow the focus of our inquiry in this case. During the interval between the filing of the indictment in December of 1982 and the imposition of sentence by the District of Columbia in July of 1984, neither the appellant nor the State could have demanded a trial pursuant to the Interstate Agreement on Detainers. *See State v. Boone,* 40 Md.App. 41, 388 A.2d 150 (1978). The interval between the State's request for temporary custody in September of 1989 and the trial in April of 1990 is properly attributable to preparation for trial and the requirements of orderly procedure. *See State v. Lawless,* 13 Md.App. 220, 230, 283 A.2d 160 (1971).

Even if we disregard the intervals before the appellant's sentencing in July of 1984, when the State could have requested temporary custody, and after September of 1989, when it did request temporary custody, the intervening delay of five years is clearly one of constitutional dimension, giving rise to a presumption of prejudice and provoking inquiry into the other factors and relevant circumstances. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192.

### *The Reason for the Delay*

The five-year delay with which we are concerned was caused by the State's failure to implement its usual monitoring practices in this case. As a result, the case "fell through the cracks." The hearing judge characterized it as "negligence," and we agree.

Although the State's negligence in this case was not a deliberate attempt to delay the trial in order to hamper the defense, neither was it a valid reason which would serve to justify the delay. The degree of weight to be attributed to a delay resulting from negligence increases in direct proportion to the length of the delay. *Jackson v. State,* 69 Md.App. 645, 653, 519 A.2d 751 (1987). Accordingly, the five-year delay must be weighted very heavily against the State.

### *The Defendant's Assertion of his Right*

The appellant claimed that he did not learn of the pending charges against him until he arrived at Lewisburg in June of 1989. The evidence would appear to support that claim: The absence of acknowledgement by the Metropolitan Police of receipt of the detainer letters and the failure of prison officials at Lorton and Spokane to inform Prince George's County that the appellant had arrived at those institutions seem to support the conclusion that no detainer had been lodged against the appellant. The letter from Lewisburg did not mention a detainer found in the appellant's institutional file; it said that the prison officials were "in receipt of a report" that charges were pending.

The hearing judge took a contrary view. Despite the absence of evidence that the appellant was aware of the pending charges, the court sought to fill that evidentiary void by taking "judicial notice" that the detainer was received by D.C. officials, that it was placed in the appellant's institutional file and followed him through the federal prison system, that he was advised by prison officials of its existence and of his right to demand a trial pursuant to the Interstate Agreement on Detainers, and that he nonetheless took no action to obtain a speedy trial. The hearing judge was wrong, not only because such matters are not a proper subject of "judicial notice," *see Johnson v. State,* 8 Md.App. 28, 34 n. 3, 257 A.2d 756 (1969), *see generally, McCormick on Evidence,* Chap. 35 (2d ed. 1972), but for other reasons as well.

As the Court pointed out in *Barker,* 407 U.S. at 527, 92 S.Ct. at 2190 (footnote omitted):

A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.

The Court went on to explain its reasons for rejecting the rigid demand-waiver rule in favor of a more flexible approach:

It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed.

407 U.S. at 528–9, 92 S.Ct. at 2191. The Court reiterated that "the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial." *Id.* Although the Court emphasized "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial," 407 U.S. at 532, 92 S.Ct. at 2193, the Court also said, at 536, 92 S.Ct. at 2195:

We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances. There may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continuances were granted *ex parte.*

In the case before us, the appellant was incarcerated in a foreign jurisdiction and unrepresented by counsel throughout the entire five-year delay. The order placing the case

on "inactive status" was done *ex parte.* "[A] man should not be presumed to have exercised a deliberate choice because of silence or inaction that could equally mean that he is unaware of the necessity for a demand." Note, "The Lagging Right to a Speedy Trial," 51 Va.L.Rev. 1587, 1610 (1965) (footnotes omitted), quoted in *Barker,* 407 U.S. at 526 n. 25, 92 S.Ct. at 2190 n. 25. "The right to 'a speedy trial' is constitutionally guaranteed and, as such, is not to be honored only for the vigilant and the knowledgeable." *Hodges v. United States,* 408 F.2d 543, 551 (8th Cir.1969), quoted in *Barker,* at 527 n. 26, 92 S.Ct. at 2190 n. 26. Under the circumstances, we conclude that the appellant's failure to demand an earlier trial is entitled to little, if any, weight.

### Prejudice to the Defendant

In *Barker,* the Court said, 407 U.S. at 532, 92 S.Ct. at 2193 (footnote omitted):

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

In this case, the appellant claimed that his defense was seriously impaired because he could not recall the date and time of the alleged offenses and would not know whom to call as alibi witnesses. The State summarily dismisses the claim as "little more than a bald allegation." We see it differently.

An affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial. *Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). Furthermore, as the Court observed in *Smith v. Hooey*, 393 U.S. 374, 379–80, 89 S.Ct. 575, 578, 21 L.Ed.2d 607 (1969) (footnote omitted):

> [I]t is self-evident that "the possibilities that long delay will impair the ability of an accused to defend himself" are markedly increased when the accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. And, while "evidence and witnesses disappear, memories fade, and events lose their perspective," a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time.

The appellant's claim of actual prejudice was not implausible. It is entitled to some weight.

## IV.

The State's five-year delay in requesting temporary custody of the appellant in this case was inexcusable. The failure of the appellant, unrepresented by counsel and possibly unaware of the pending charges against him, to demand an earlier trial cannot reasonably be construed as a deliberate decision to delay the trial. The presumption of prejudice arising from long delay is bolstered by the plausible claim of actual prejudice in this case. The inescapable conclusion is that the appellant was deprived of his constitutional right to a speedy trial. We hold that the court erred in denying the motion to dismiss the indictment.

JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS TO DISMISS THE INDICTMENT.

COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.