591 A.2d 531

**Billy Dale DALTON**

v.

**STATE of Maryland.**

**No. 860, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

June 26, 1991.

674

Karen L. Jones, Wynee Hawk and Stuart L. Alison, Bel Air, for appellant.

Tarra R. Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Joseph I. Cassily, State's Atty. for Harford County, Bel Air, on the brief), for appellee.

Submitted before GARRITY and ROSALYN B. BELL, JJ., and H. KEMP MacDANIEL (retired, Specially Assigned), Judge.

GARRITY, Judge.

The appellant, Billy Dale Dalton, was convicted at a bench trial in the Circuit Court for Harford County (Whitfill, J.) of use of a handgun in the commission of a crime of violence, attempted murder, and assault and battery. The latter conviction merged into the conviction for attempted murder. Having been sentenced consecutively to 30 years for attempted murder and 20 years for the use of a handgun, he brings this appeal from the judgments entered on those convictions, raising the following issues for our review:

I. Whether the seven month and twenty-nine day delay in bringing his case to trial denied his right to a prompt trial guaranteed by Art. 27 § 591 and Md. Rule 4–271.

II. Whether the delay violated his Constitutional right to a speedy trial.

III. Whether the lower court found that the appellant possessed a specific intent to kill.

IV. Whether the lower court erred in finding the appellant guilty of use of a handgun in the commission of a felony or crime of violence.

## FACTS

The appellant was arrested and served with an indictment on March 29, 1989. Later that same day, he was released on bail.

On May 23, 1989, the appellant made his first appearance before the circuit court and was arraigned. One day earlier, on May 22, the State had filed a motion to reconsider the appellant's bail upon learning that he had been charged with committing an unrelated offense on April 28, 1989.

As a result of the appellant's failure to appear at the bond review hearing, a bench warrant was issued on June 16, 1989. The record indicates that the appellant had absented himself from Maryland and did not return until July 19, when he was served with a bench warrant.[1] Shortly thereafter, at a bond hearing on July 25, the appellant's bail was revoked, and he remained incarcerated until trial.

The trial was originally scheduled to begin on July 26, 1989. The docket entries reflect that the case was postponed on that date for good cause and with the approval of the administrative judge. The case was rescheduled for trial on October 4, 1989. On September 15, 1989, at a motions hearing, the State advised that appellant's trial "probably wouldn't be reached on October 4th for a variety of reasons," including the following:

[PROSECUTOR]: First, it is my understanding that, of course, we have a limited number of judges and available jurors. It is my understanding that there is a murder trial starting on the 28th. That would be State v. Powell. I think also there is another murder trial scheduled to start late in September with Joe Cassilly prosecuting. It is the one with the young baby that was killed. Also, Judge Waldron's got a protracted custody, I believe, battle, which, I think, is scheduled all the way up to October 3rd. Could go longer than that. I think he requested a desk day because it has been four weeks trying that thing, which would leave us with one judge if that scenario is borne out.

---

1. The record does not specify when the appellant left Maryland; however, at a motions hearing on September 15, 1989, the State indicated that the appellant failed to attend the bond hearing because he was in Tennessee at the time.

Also on my particular docket this is not the oldest case. I have got other felony cases which may get tried before it that are older than that.

No postponement was requested at that time.

On October 4, 1989, the State requested a postponement. The administrative judge, finding that neither a judge nor a jury was available to hear the case, granted the postponement over the appellant's objection and the trial was rescheduled for November 27, 1989.

On November 27, the appellant filed another motion to dismiss the indictment on speedy trial grounds. The motion was denied and the trial began the following day, November 28, 1989. Near the end of the first day, appellant learned that the victim, Alex Bushong, was not present at trial.[2] The record reflects that on November 7, Mr. Bushong had been admitted to a mental health facility in York, Pennsylvania for depression and detoxification. In a letter dated November 21, Mr. Bushong's doctor advised that "[Mr. Bushong's] appearance in Court for testimony at present would adversely affect his mental status."

Upon learning of Mr. Bushong's absence, the appellant orally renewed his motion to dismiss, arguing that he had been denied his constitutional right to a speedy trial. Defense counsel proffered that Mr. Bushong's testimony would be favorable to the appellant because the victim would have testified that the shooting was accidental and that the appellant had not intended to kill him.[3] The court denied the motion and the trial proceeded to a finding of guilt.

---

**2.** Neither party had subpeonaed Mr. Bushong at any point in the proceedings.

**3.** At the postponement hearing on October 4, 1989, the State noted that sometime in late September 1989, the appellant had been indicted for another attempted murder of Mr. Bushong and for intimidating a witness in the instant case.

### I. Art. 27, § 591, and Md.Rule 4–271

The appellant contends that the October 4, 1989 postponement violated his right to a prompt trial as guaranteed by Art. 27 § 591 and Md.Rule 4–271. Basing this contention on a two-pronged argument, the appellant asserts, initially, that the October 4 postponement, which extended the trial date to a time more than 180 days after the appellant had first appeared before the court, lacked good cause. The second prong of the appellant's argument is that the administrative judge did not set the new trial date with due diligence.

Md.Rule 4–271 mandates that a trial date in circuit court shall not be later than 180 days after either the appearance of counsel, or the defendant's first appearance before the circuit court, whichever is the first to occur. Md.Rule 4–271(a); *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979). Failure to comply with the 180–day rule may result in dismissal of the charges with prejudice unless the postponement beyond the 180–day period is for good cause and is approved by the county administrative judge or designee. Md.Rule 4–271(a).

Although somewhat parallel to the constitutional right to a speedy trial, the statutory right has a different animus. *State v. Farinholt*, 54 Md.App. 124, 130, 458 A.2d 442 (1983), *aff'd*, 299 Md. 32, 472 A.2d 452 (1984).[4] The fundamental goal served by the statutory right is furthering the public interest in avoiding harm resulting from unjustifiable delays and excessive postponements in criminal trials. *Id.; see also State v. Frazier*, 298 Md. 422, 456

---

**4.** Determining a violation of the right protected by Art. 27, § 591, and Rule 4–271 involves an entirely different analysis than that used to determine a violation of the constitutional right to a speedy trial. In finding a constitutional violation a court is guided by the four-part balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). To determine the scope and meaning of a violation for the purposes of the statute, a court must rely ultimately upon the cannons of statutory construction. Casenote, *State v. Hicks*, 9 U.Balt.L.Rev. 473, 479 n. 1, 481 (1980).

n. 26, 470 A.2d 1269 (1984) (citation omitted). Benefits inuring to defendants from the rule are "incidental." *Marks v. State,* 84 Md.App. 269, 277, 578 A.2d 828 (1990), *cert. denied,* 321 Md. 502, 583 A.2d 275 (1991). The Constitution, on the other hand, focuses more upon the prejudice an accused may suffer as a result of delay.[5]

Rule 4–271 commits the determination that there is good cause to extend the trial date beyond the 180–day period to the court's discretion. *Marks,* 84 Md.App. at 277, 578 A.2d 828. (citations omitted). The good cause determination carries a heavy presumption of validity. *Id.* Consequently, to prevail, the appellant must demonstrate that the postponement was a clear abuse of discretion. *Frazier,* 298 Md. at 462, 470 A.2d 1269.

At the hearing on October 4, the administrative judge postponed the case, basing the good cause determination on the unavailability of a judge and jury. To support his contention that the lower court's decision to postpone the case was not supported by good cause, the appellant argues that the postponement could have been avoided because the office of the Harford County State's Attorney, who is responsible for scheduling criminal trials, could have scheduled the trial for a date within the 180–day period.

Recognizing that Rule 4–271 attempts to "offer the courts some leeway in the disposition of an extremely heavy caseload," the Court of Appeals held that unavailability of a court and jury occasioned by an overcrowded docket may justify delaying a trial beyond the 180–day period. *State v. Frazier,* 298 Md. 422, 461–462, 470 A.2d 1269 (1984) (quoting testimony before House Judiciary Committee, February 12, 1980 H.B. No. 205). *See also State v. Pennington,* 299 Md. 23, 29–30, 472 A.2d 447 (1984) (postponement beyond 180–day period because of congested docket insufficient, by itself, to demonstrate violation).

---

5. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193.

■ The appellant has not demonstrated that the administrative judge's decision to postpone the trial date was a clear abuse of discretion. The record reflects that the administrate judge granted the postponement on October 4 because there was no judge or jury available. Viewed in light of this exigency, any control the Harford County State's Attorney may have over scheduling criminal trials is irrelevant, unless there was some evidence of dilatory conduct on the part of the State. Because there is no evidence of such conduct, the administrative judge's good cause finding is adequately supported by the record.[6]

Having established a valid postponement, the only remaining question is whether the length of the postponement was a clear abuse of discretion. If a case has been postponed for good cause, it "may yet run afoul of the statute and rule if, after a valid postponement, there is inordinate delay in bringing the case to trial...." *State v. Cook*, 322 Md. 93, 98–99, 585 A.2d 833 (1991) (quoting *Rosenbach v. State*, 314 Md. 473, 479, 551 A.2d 460 (1989)).

■■ An administrative judge is not required to insure that a new date is set within the 180–day period. *Cook*, 322 Md. at 108, 585 A.2d 833. Thus, a postponement beyond that period does not necessarily constitute an inordinate delay. *Id.* In the instant case, appellant's case came to trial on the eighth day after the expiration of the 180–day period. In light of the judicial gloss we have given to Rule 4–271, a delay of merely eight days is not inordinate. *See Cook*, 322 Md. at 108–109, 585 A.2d 833 (twenty-three day delay not inordinate).

---

6. As further support for the argument that there was no good cause for the postponement, the appellant contends that the court's finding that a judge and jury were unavailable is not supported by the record. The factual basis for this argument is that at the time the postponement was granted, the court had not begun to take evidence in the homicide case that preempted the appellant's case. These facts, standing alone, serve only to reinforce the conclusion that the Circuit Court for Harford County suffered from an overcrowded docket, and in no way compels the conclusion that the court abused its discretion.

## II. Constitutional Right to a Speedy Trial

The Sixth Amendment, provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const. amend. VI.[7] In giving dimension to the constitutional speedy trial right, the Supreme Court recognized the amorphous nature of the right which embodies conflicting principles:

The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.

*Barker v. Wingo,* 407 U.S. 514, 519, 92 S.Ct. 2182, 2186, 33 L.Ed.2d 101 (1972).

Recognizing the vague nature of the speedy trial right, the Supreme Court stated that it is "impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." *Id.* at 521, 92 S.Ct. at 2187 (footnote omitted). By the same token, the "amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been denied." *Id.* at 530, 92 S.Ct. at 2192. To accommodate these conflicting policies, the court adopted a "balancing test in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 92 S.Ct. at 2191–92 (footnote omitted).

In setting forth the balancing test, the Court in *Barker* identified the following four factors for determining whether the speedy trial right has been denied: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) any actual

---

7. Article 21 of the Maryland Declaration of Rights provides, "That in all criminal prosecutions every man hath a right ... to a speedy trial...."

prejudice the defendant suffered as a result of the delay. *Id.* In its refusal to make any one factor dispositive, the Court cautioned that none of these should be elevated to the status of "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. at 2193.

Honing the *Barker* analysis by laying out an analytical framework for its application, the Court of Appeals distinguished presumed prejudice and actual prejudice:

> A problem peculiar to the *Barker* test is its use of the terms *presumption of prejudice* and *actual prejudice.* When there has been a lengthy pretrial delay, one of constitutional dimension, then a presumption arises that the defendant has been deprived of his right to a speedy trial; a presumption of prejudice. Once this presumption asserts itself, a balancing test must be employed which involves a weighing of four factors, one of which is actual prejudice. Actual prejudice involves a consideration of three interests the speedy trial right is meant to protect. Whatever importance it assumes in the final outcome is a function of the facts of the particular case.

*Brady v. State,* 291 Md. 261, 266, 434 A.2d 574 (1981).

■ To determine whether there is a deprivation of constitutional dimension, the length of the delay is the "triggering mechanism." *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. Unless the delay is presumptively prejudicial, there is no reason to inquire into the other three factors. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. Thus, we begin our analysis by considering the length of the delay.

### 1. Length of Delay

■ For speedy trial purposes, the length of the delay is the period between the date of arrest, or formal charge, and the date of trial. *State v. Gee,* 298 Md. 565, 568, 471 A.2d 712, *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984). The appellant was arrested on March 29, 1989

and the trial began on November 27, 1989; thus, the length of the total delay was seven months and twenty-nine days.

We view the length of the delay in light of the complexity of the case and the severity of the charges. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. As the Court noted in *Barker*, "[t]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* The charges in the instant case, including attempted murder, are severe, although not necessarily complicated.

■ Viewed in light of the severity of the charges, we hold that the nearly eight month delay in the instant case minimally reaches constitutional dimension when measured against the general benchmark that emerges from our cases. *See e.g. Gee*, 298 Md. 565, 471 A.2d 712 (six month delay not of constitutional dimension where defendant charged with robbery with a deadly weapon); *compare, Carter v. State*, 77 Md.App. 462, 550 A.2d 972 (1988) (seven month and twenty-five day delay reaches constitutional dimension where defendant charged with credit card misuse).

### 2. Reasons for Delay

Closely related to the length of delay are the reasons for delay. In *Barker*, the Court recognized that some reasons for delay carry greater weight than others:

A deliberate attempt to delay the trial in order to hamper the defense should be weighed more heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted).

The delay in the instant case can be divided into two four-month periods. The first period, from the appellant's arrest on March 29, 1989 to the original trial date on July

26, 1989, lasted approximately four months. We subdivide the first period to account for the appellant's absence from Maryland. The second period, from July 27, 1989 to November 27, 1989, the date the case went to trial, lasted four months.

From March 29, 1989, when the appellant was released on bail, to June 15, and from July 20 to July 26, we are left to assume that the parties were involved in normal pre-trial preparations. Time spent in pretrial preparation is neutral and is not charged to either the defendant or the State. *Ferrell v. State,* 67 Md.App. 459, 463–64, 508 A.2d 490 (1986) (citing *Hines v. State,* 58 Md.App. 637, 653–54, 473 A.2d 1335, *cert. denied,* 300 Md. 794, 481 A.2d 239 (1984)). Thus, two and three-quarters months are neutral.

The record reflects that a bench warrant issued for the appellant on June 16, 1989 because he failed to appear for a bond review hearing on June 14. The record further reflects that the appellant had absented himself from Maryland until July 19, and therefore had not been served with the warrant until that time.

The fugitivity doctrine provides that a defendant cannot profit from his own wrong in delaying a trial. *Powell v. State,* 56 Md.App. 351, 365, 467 A.2d 1052 (1983) (eighteen months of two year delay attributable to defendant's absence from jurisdiction), *cert. denied,* 298 Md. 540, 471 A.2d 745, *cert. denied,* 299 Md. 137, 472 A.2d 999, *reh'g denied,* 299 Md. 656, 474 A.2d 1345 (1984) (citations omitted). While the record does not reveal whether the appellant's absence from Maryland had any bearing on the July 26 postponement, the fugitivity doctrine directs us to charge the appellant with the period from the date the warrant issued, June 16 to the date he returned to Maryland, July 19. *Id.* Thus, the period chargeable to the appellant is one month and three days.

On July 26, 1989, the State requested a postponement, which was granted for good cause. The trial was rescheduled for October 4, 1989. On October 4, the case

was postponed for good cause, upon the State's request, because of the unavailability of a judge and jury to hear the case. This period, lasting approximately two and one-half months, is chargeable solely to the State. *Barker,* 407 U.S. at 527, 92 S.Ct. at 2190 (footnote omitted). We note, however, that in light of the good cause determination supporting the July 26 continuance, and the absence of anything in the record to demonstrate that this period of delay was attributable to prosecutorial neglect or indifference, this delay does not weigh heavily against the State. *Compare Brady v. State,* 291 Md. at 269, 434 A.2d 574.

■■■■ The period from October 5, 1989 to November 27, 1989, although chargeable to the State, carries little weight because the delay was attributable solely to the unavailability of a judge and jury on October 4. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. As there is no evidence to suggest any deliberate attempt to hamper the defense or gain tactical advantage, this one month and three week delay does not weigh heavily against the State. *Id.*

### 3. Assertion of Right

Because the strength of the defendant's efforts will be affected by the length of the delay, asserting the speedy trial right weighs heavily in determining if the right has been denied. *State v. Bailey,* 319 Md. 392, 409–10, 572 A.2d 544 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 118, 112 L.Ed.2d 87 (1991). The appellant first asserted his speedy trial right on August 24, 1989 by way of a demand for a speedy trial.[8] Having promptly asserted his right, this factor weighs in the appellant's favor. *See Ferrell v. State,* 67 Md.App. at 464, 508 A.2d 490.

### 4. Prejudice

■■■■ Prejudice to the defendant must be "assessed in light of the interests of defendants which the speedy trial

---

**8.** The record does not indicate whether the appellant objected to the postponement on July 26, 1989.

right was designed to protect." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Reed v. State,* 78 Md.App. 522, 535, 554 A.2d 420 (1989). In *Barker,* the Court identified three such interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; (3) limiting the possibility that the defense will be impaired. *Id.*

■ The appellant was incarcerated, without bail, pursuant to a bench warrant from July 15, 1989 to November 27, 1989. Thus, the total length of incarceration was four and one half months. Given that the bench warrant issued and the appellant's bail was revoked for his failure to appear at the hearing on July 14, we do not perceive this four and one-half month period as oppressive.[9]

■ Arguing that he has suffered actual prejudice, the appellant contends that his defense has been impaired because the delay caused him to suffer the loss of testimony of Alex Bushong, the victim and a key witness. The record reflects that on November 7, 1989, Mr. Bushong was admitted to a hospital in York, Pennsylvania for depression and detoxification. The record further reflects that Mr. Bushong's physician advised that testifying at trial would have adversely affected his recovery. When defense counsel learned, on the first day of trial, that Mr. Bushong would not testify, he proffered that the victim's testimony would have been favorable to the appellant because he would have testified that the shooting was accidental.

Confronted with circumstances unlike those of the instant case, the Court of Appeals held that the defendant had demonstrated actual prejudice resulting from impairment of his defense due to the delay. *Epps v. State,* 276 Md. 96, 119–20, 345 A.2d 62 (1975); *see also, Davidson v. State,* 87

---

9. The record does not reveal if the appellant's bail was revoked solely because of his failure to appear at the June 16, 1989 hearing or if the revocation also resulted from his April 28, 1989 arrest. It is therefore impossible to determine whether the appellant's incarceration is attributable solely to the charges in the instant case.

Md.App. 105, 589 A.2d 114 (1991) (memory lapse); *but see, Daniels v. State,* 30 Md.App. 432, 352 A.2d 859 (1976) (mere passage of time not demonstrative of actual prejudice); *Thompson v. State,* 15 Md.App. 335, 290 A.2d 565 (1972) (absent witness's testimony not relevant to defense).

In *Epps,* the defendant elected not to testify at trial. His sole witness had been present when the case had come before the court previously. At that time, the witness apparently was prepared to testify that the defendant was not present at the scene of the crime. Because the victim was unable to identify the defendant as one of the perpetrators of the robbery, the witness provided a critical alibi. Sometime after the postponement but before trial, the witness had been inducted into the armed forces and was serving in Korea at the time of trial. Thus, the usual methods of procuring out-of-court testimony were not realistic options.

The facts of *Epps* give rise to a general guideline for determining whether a defendant has demonstrated that his defense has been impaired by delay. First, in *Epps* there was a showing that the witness's testimony was important to the defense. Second, there was a showing that the witness had been available at an earlier proceeding. Finally, the witness was unavailable at the time of trial and there were no alternative means to secure his testimony. *Epps,* 276 Md. at 119–20, 345 A.2d 62.

In the case at hand, neither the State nor the defense had ever subpoenaed Alex Bushong. The docket entries reflect that Mr. Bushong had not been subpoenaed for the July 26, October 4, or November 27 trial dates. The record further reflects that defense counsel knew Mr. Bushong's whereabouts prior to his November 7 commitment to the hospital because defense counsel stated at trial that he had spoken with Mr. Bushong on two different occasions. Nevertheless, defense counsel neither deposed Mr. Bushong nor made any effort to secure his· presence for either the October 4 or November 27 trial dates.

Moreover, there is no showing that Mr. Bushong's testimony would have been critical to the appellant's defense. Much of the evidence the appellant presented at trial indicated that Mr. Bushong had substance abuse problems and was psychologically unstable at the time he was shot. Thus, assuming that the proffer made by the defense is true, any credibility Mr. Bushong's testimony may have had, could have been diminished substantially.[10] Unlike the defendant in *Epps*, the appellant failed to demonstrate actual prejudice caused by the victim's not having testified.

### Balancing

 In the instant case, only four months of the delay is chargeable to the State. As there is no indication that the delay resulted from prosecutorial neglect or a deliberate attempt to hamper the defense, this does not weigh heavily. Because the remainder of the delay is either neutral or chargeable to the defendant, the delay was not substantial.

Taking the insubstantial length of the delay together with the appellant's lack of actual prejudice, we affirm the lower court's ruling that the appellant had not been denied his right to a speedy trial.

### III. Sufficiency of Evidence to Support Attempted Murder Conviction

Attacking the validity of his conviction for attempted murder, the appellant contends that the evidence was insufficient to support his conviction. The appellant argues that the trial court failed to find that he possessed the specific intent to murder the victim because the only finding made by the court was that the appellant intended to prevent the victim from approaching his home. This contention has no basis in the record.

---

**10.** As previously noted, the appellant was charged with a second attempted murder of Mr. Bushong. We do not speculate as to what effect, if any, the second case may have had upon Mr. Bushong's testimony had he testified in the instant case.

Many people had come and gone from the appellant's house by the time Alex Bushong and his friends arrived late in the evening of February 12, 1989 and parked some distance from the appellant's house. Moments earlier, John Gunther, a friend of the appellant's, had arrived. Standing nearby, Mr. Gunther and others became spectators to a shouting match between Mr. Bushong and Mr. Hicks (another friend of the appellant's), who told Mr. Bushong and his friends to leave.

Attracted by the argument in his driveway, the appellant stepped out onto his porch, told Bushong to leave, and fired two shots in the air. Frightened, Bushong implored the appellant to stop shooting. Ignoring Bushong's entreaties, the appellant fired a third shot, striking Bushong in the leg.

The following day, in responding to a query from a friend as to whether he had shot Bushong, the appellant replied, "[w]ell, if I had hit him where I aimed at, he wouldn't be here now. I put it on his nose, but he was coming up the hill and he must have been a half-inch low, and I hit his leg." There was further testimony that the appellant shouted to Bushong, "[i]f you don't get off my property, the next one will be in your head."

In reviewing the sufficiency of the evidence supporting a conviction, we determine "whether after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *West v. State*, 312 Md. 197, 207, 539 A.2d 231 (1988) (quoting *Dixon v. State*, 302 Md. 447, 450, 488 A.2d 962 (1985)). If the defendant has been tried by the circuit court without a jury, as in the instant case, the judgment will not be set aside unless it is clearly erroneous. *Webber v. State*, 320 Md. 238, 248, 577 A.2d 58 (1990). In determining whether the judgment is clearly erroneous, "due regard will be given to the opportunity of the trial court to judge the credibility of the witness." *West v. State*, 312 Md. at 207, 539 A.2d 231 (citations omitted).

██ An attempted second degree murder conviction may be sustained only if the perpetrator is found to have harbored the specific intent to kill his victim. *Earp v. State,* 76 Md.App. 433, 440, 545 A.2d 698 (1988), *aff'd,* 319 Md. 156, 571 A.2d 1227 (1990). The intent to kill need only be of the nature that if the attempted "offense had been completed, it would have been either first or second degree murder." *Selby v. State,* 76 Md.App. 201, 212, 544 A.2d 14 (1988), *aff'd,* 319 Md. 174, 571 A.2d 1236 (1990). Lack of proof of deliberation and premeditation does not preclude a finding of specific intent to kill. *Earp,* 76 Md.App. at 443, 545 A.2d 698. Intent merely to commit grievous bodily harm, however, is insufficient to sustain a conviction for attempted murder. *State v. Earp,* 319 Md. at 164, 571 A.2d 1227.

██ At the conclusion of all the evidence in the instant case, the trial court found the appellant guilty of attempted murder, and rejected his theory that the shooting was accidental. In determining what the trial court's disputed findings were, we examine the court's statements in rendering its decision with respect to the attempted second degree murder charge:

> The defendant cocked the gun intentionally and fired the third shot; that the defendant had a specific intent to shoot Alex when that third shot was fired. I find, as a matter of fact, that was not an accidental shot.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> I find, as a matter of fact, that the defendant did say to John Gunther, "If I had hit him where I aimed, he would not be here now and I put the bead on his nose and I must have been off because he was coming up the hill."
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> It is purely a matter of luck not skill that caused the wound not to be a fatal shot.

We hold that the court's finding that the appellant possessed a specific intent to kill was firmly supported by the evidence adduced at trial.

### IV. Sufficiency of Evidence to Support Conviction for Use of a Handgun in the Commission of a Crime of Violence

The appellant's final claim of error rests upon his argument that the evidence was insufficient to support his conviction for use of a handgun in the commission of a crime of violence. The crux of this argument is that the State failed to prove the predicate crime of violence necessary to uphold the handgun conviction. This argument has no merit in light of our holding that the evidence was sufficient to sustain the conviction for attempted second degree murder.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.

ROSALYN B. BELL, Judge, dissenting.

I respectfully dissent from the majority's opinion regarding whether appellant's constitutional right to a speedy trial was violated. Additionally, I have some concern regarding the current interpretation of Rule 4–271.

I agree with the majority that under current case law Rule 4–271 was not violated. I must point out, however, that the good cause determination, while based on lack of judge and jury, was not as innocuous as the majority opinion would have us believe. When the administrative judge postponed the trial on October 4, the following colloquy occurred:

"THE COURT:

 \* \* \* \* \* \*

"I will say, however, Mr. [Prosecutor], you know, and I know and [counsel for appellant] knows, and everybody else knows it is the primary responsibility for the scheduling of these matters that rests with the State's Attorney.

"[PROSECUTOR]: I know. I want to specially set this to get this thing resolved.

"THE COURT: Perhaps you two can talk about that today; none of this business of looking at the calendar and picking a date.

"[PROSECUTOR]: I want to set it other than with other cases of mine.

"THE COURT: No one talks to anyone—one office to the next office. No one knows what anybody else is doing. What I am saying is don't just look at your calendars.

"[PROSECUTOR]: I am going to talk to Miss Carter,[1] who has the entire docket for everybody.

"THE COURT: You are going to have to spend time, pick a date, and talk to the assistant or whoever schedules, immediately before that to see what their situation is, and make sure they don't have a 20–striker to be tried.[2] *That's what happens consistently.*" (Emphasis added.)

The only implication possible from these comments is that the method of scheduling was a contributing condition to court congestion in Harford County and that congestion was chronic.

Nevertheless, the law is clear that, in order to obtain a reversal, the postponement must be a clear abuse of discretion. *State v. Frazier,* 298 Md. 422, 461–62, 470 A.2d 1269 (1984). In this case, there was no judge or jury to hear the

---

**1.** Since the scheduling was the responsibility of the State's Attorney's Office, one can assume Miss Carter was an employee of that office. This, however, could not be confirmed in the record.

**2.** A "20–striker" refers to a case where the parties have a large number of peremptory challenges. Under old Rule 4–313, in a case involving the death sentence or imprisonment for 20 or more years, the defendant was allowed 20 peremptory challenges and the State 10. In 1986, that Rule was amended so that the defendant has 20 peremptory challenges and the State 10 peremptory challenges only when the death sentence or life imprisonment are involved. In cases where the defendant could be imprisoned for 20 or more years, but less than for life, the defendant has 10 strikes and the State has five. Rule 4–313. Empaneling a jury in such cases can take a substantial amount of time. Additionally, the trials are usually lengthy because the cases are more serious.

case. Thus, the administrative judge had very little choice but to grant a postponement.

The majority acknowledges that one purpose of Rule 4–271 is to further "the public interest in avoiding harm resulting from unjustifiable delays and excessive postponements in criminal trials." Opinion at 682. The Rule also seeks to promote orderly procedure by setting a time limit for the State to bring the defendant to trial. *See* Case Note, *State v. Hicks,* 9 U.Balt.L.Rev. 473, 477 (1980).

The trial judge suggests in his comments that the practice of the State's Attorney's Office was to schedule cases without regard to other cases already scheduled. To hold that conflicts arising from that practice constitute good cause eviscerates Rule 4–271 and violates the very purpose of the Rule. If this Rule is to serve its purpose or retain any vitality, then we need to reexamine the interpretation of the good cause requirement. Additionally, when any cause constitutes good cause, it invites trivialization, not only of this Rule, but of other Rules as well.

Regarding the majority's analysis of any violation of appellant's constitutional right to a speedy trial, I agree that the nearly eight-month delay reaches constitutional dimensions. Opinion at 688. I also agree that appellant's prompt assertion of his right weighs in his favor. Opinion at 686. I disagree, however, with the majority's analysis of the reasons for delay and its assessment of the prejudice suffered by appellant because of the delay.

The majority is correct in stating that the four-month delay from the first trial date of July 26 to the day the trial started on November 27 is attributable to the State. Opinion at 687–688.[3] I disagree, however, with the majority's assertion that the period of time from June 16, when a

---

**3.** Arguably, this delay should be weighed more heavily against the State because the State's Attorney's Office controls the scheduling of criminal cases. As the majority points out, however, there is no evidence that the State intentionally delayed this case. The delay in this case may be due to routine problems in scheduling cases.

bench warrant was issued for appellant for failure to appear for a bond review hearing, to July 19, when he returned to Maryland, is attributable to appellant. The majority acknowledges that the record does not indicate whether appellant's absence had any bearing on the July 26 postponement, but states that "the fugitivity doctrine directs us to charge the appellant with the period from the date the warrant issued, June 16 to the date he returned to Maryland, July 19." Opinion at 687–88.

The fugitivity doctrine does not direct us to do so. The fugitivity doctrine provides that

"[a]ppellant cannot avail himself of *Barker* when it is he by his criminal acts in another state or his willful absence from Maryland *which prevented the State from proceeding to trial.*"

*Powell v. State,* 56 Md.App. 351, 365, 467 A.2d 1052 (1983), *cert. denied,* 298 Md. 540, 471 A.2d 745, *cert. denied,* 299 Md. 137, 472 A.2d 999 *motion for reconsideration denied,* 299 Md. 656, 474 A.2d 1345 (1984), quoting *Isaacs v. State,* 31 Md.App. 604, 614, 358 A.2d 273, *cert. denied,* 278 Md. 724 (1976) (emphasis added). The State has not produced evidence or even argued that it was prepared to go to trial before July 26.[4] Because appellant's absence did not exceed the time reasonably necessary for the State to prepare the case for trial, the period of time from June 16 to July 19, as well as the time from March 29 to June 15, should not be charged to either appellant or the State.

I also disagree with the majority's statement that appellant was not prejudiced by the delay. Appellant's counsel proffered that the victim would have testified favorably on appellant's behalf. Counsel proffered that the victim would have stated that the shooting was accidental and that appellant did not intend to injure him.

---

4. Interestingly enough, the State had not subpoenaed any witnesses for the July 26 trial.

The majority argues that appellant neither deposed the victim nor did appellant subpoena the victim. Normally, a deposition in a criminal case is taken only to perpetuate the testimony of a witness who will be unavailable for trial. *See* Rule 4–261. Appellant had no reason to believe that the victim would be unavailable because the victim had been listed as a State's witness. Moreover, at the hearing on September 14, the State asserted that the victim was "around to testify." Thus, deposing the victim would have been unnecessary from appellant's viewpoint. Additionally, because the victim was listed as a State's witness, it was reasonable for appellant to assume that the State would subpoena him. Finally, appellant did not learn of the victim's unavailability and whereabouts until the first day of trial.

The majority also states that appellant presented evidence that the victim had substance abuse and psychological problems. The majority argues that any credibility the victim's testimony would have had would be substantially diminished. Thus, the majority holds that appellant suffered no actual prejudice. Appellant, however, should have had the opportunity to present the victim's testimony. The trier of fact could then judge the credibility of the victim's testimony based on his demeanor at the trial and his past history. While the victim's testimony may not have definitively proved that appellant did not intend to harm him, the victim's testimony may have raised a reasonable doubt. This reasonable doubt would have prevented a conviction on the attempted murder charge. Thus, I would hold that appellant was actually prejudiced.

Finally, I disagree with the majority's balancing of the four factors. None of the delay in this case was shown to be attributable to appellant. Moreover, appellant was actually prejudiced by the delay. Additionally, appellant asserted his right to a speedy trial promptly and continued to press the issue. While the delay in this case was not as long as the delay in some cases, *see, e.g., Powell,* 56 Md.App. at 358, 467 A.2d 1052 (delay of almost 34 months),

the balance of the other factors points to a violation of appellant's constitutional right to a speedy trial. Therefore, I respectfully dissent from the majority's conclusion that appellant's constitutional right to a speedy trial was not violated and would reverse his convictions.