780 A.2d 1210

**Orville WILLIAMS,**

v.

**STATE of Maryland.**

No. 2054, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Sept. 11, 2001.

464

Allen E. Burns, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Michelle W. Cole, Staff Attorney (J. Joseph Curran, Jr., Attorney General, Kathryn Grill Graeff, Assistant Attorney General and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Argued before HOLLANDER, SONNER, THEODORE G. BLOOM (Retired, specially assigned), JJ.

THEODORE G. BLOOM, Judge, Retired, Specially Assigned.

Appellant, Orville Williams, was convicted by a jury in the Circuit Court for Baltimore City of possession of a controlled dangerous substance (cocaine), possession of drug paraphernalia (a glass pipe with cocaine residue in it), and loitering in violation of Baltimore City's loitering ordinance, Baltimore City Code, Art. 19, § 25–1. The court sentenced appellant to six months' incarceration on the cocaine possession count, fined him $500 on the paraphernalia possession count, and

imposed a term of ten days' incarceration and a fine of $500 for loitering, concurrent with the other sentences.

In this appeal from those judgments, appellant asserts that: (1) his arrest for loitering, and the search incident to that arrest, which yielded the glass pipe with cocaine residue (constituting both controlled dangerous substance and paraphernalia), violated the protection afforded him by the Fourth Amendment; (2) the evidence was legally insufficient to support the conviction for loitering; and (3) the trial court erred in permitting the prosecuting attorney to withdraw her nolle prosequi of the cocaine possession charge.

For the reasons set forth below, we shall reverse the judgments of the circuit court.

### FACTS

Appellant filed a pre-trial motion to suppress evidence (the glass pipe with cocaine residue) seized from his person following his arrest for allegedly violating Baltimore City's loitering ordinance. The arresting officer, Eric Fabian, testified, in pertinent part, as follows:

Direct Examination by Ms. Leatherwood (Assistant State's Attorney):

Q. Officer, may I direct your attention to July 4th of this year around 10:45 a.m. Were you on duty?

A. Yes, I was.

Q. Where were you on duty?

A. In the 27 hundred block of West Lanvail Street, where I observed the Defendant—sitting to the left side of defense counsel at the table, wearing the blue shirt— identified as Mr. Orville Williams. I observed Mr. Williams standing with a group of males and females who appeared to impede the free flow of pedestrian traffic where the citizens had to literally walk in the street to get to their destination. At that, I advised the defendant, along with the other individuals, that they were loitering in a public place and if they didn't move on, they would all

be arrested. I left the area and returned approximately 15 minutes later and observed the defendant at the same location committing the same offense.

Because of his blatant disregard of the law and his failure to stop his violation after being forewarned, I arrested the defendant and a search incident to arrest disclosed a firearm. I have to refer to my notes.

THE COURT: You may refresh your recollection.

THE WITNESS: One glass non-conventional smoking device containing white powder substance of suspected cocaine, one, 1 hundred dollar bill found in defendant's right back pocket. Property list in my statement of probable cause was submitted to the evidence control section for analysis and defendant was taken to C.B.I. and charged accordingly.

Q. The area that Mr. Williams was in, was he blocking pedestrians? Was he on the sidewalk or in the middle of the street?

A. On the sidewalk.

Q. So, he was blocking pedestrian traffic?

A. Yes, ma'am.

CROSS EXAMINATION by Ms. Nurmi (Defense counsel):

Q. Officer, is there a bus stop at that location?

A. I don't remember?

Q. You don't remember?

A. No.

Q. Is it possible Mr. Williams could have been waiting for a bus?

A. I don't know.

THE COURT: Doesn't matter if he is waiting for a bus or not if he is blocking traffic, right sir? If he is blocking traffic, it doesn't matter if he is waiting for a bus or waiting for somebody to bring him a world series ticket.

THE WITNESS: Doesn't matter, sir.

THE COURT: Or waiting for the arrival of the Messiah, correct?

THE WITNESS: Right.

THE COURT: If he is blocking, he has to move under the law, correct?

THE WITNESS: Yes.

THE COURT: Any further cross?

BY MS. NURMI:

Q. Officer, he did move when you asked him the first time, is that correct?

A. He was still there when I left. He gave me the impression he wasn't going to move. I left the area and he was still there. I came back approximately six minutes later and he was still there at the location, at which time I placed him under arrest.

Q. Did you ask him to move a second time?

A. I asked him the first time. I left, came back, he was still there. No, I didn't ask him the second time. I asked him the first time.

Q. The second time when you came back, how many people had to walk around Mr. Williams?

A. I don't remember.

Q. So, the second time you don't remember if he was blocking traffic or not?

A. There was a group of individuals still at the location.

Q. Officer Fabian, the second time you came back you didn't see him blocking traffic?

A. He was still impeding the free flow of pedestrian traffic.

Q. Officer Fabian, I just—

MS. LEATHERWOOD: Objection, asked and answered.

THE COURT: Overruled.

BY MS. NURMI:

Q. Officer Fabian, a moment ago you said you don't remember that people had to walk around him or not the second time?

A. You asked me how many people were there and I said I didn't remember.

Q. No, Officer Fabian, I asked you if people had to walk around him the second time you came back.

A. They had to walk around a second time.

Q. How many people had to walk around?

A. I don't remember.

Q. Why is it you don't remember?

A. I don't remember how many people.

Q. One?

A. I don't remember.

Q. Two?

A. I don't remember.

MS. LEATHERWOOD: Objection, Your Honor.

THE COURT: Overruled. Was there at least one person who was inconvenienced by Williams standing there at that time?

THE WITNESS: Yes, sir.

THE COURT: Next question.

BY MS. NURMI:

Q. Was that a man or a woman?

A. I don't remember.

Q. Then how do you remember it was a person?

A. He was arrested. I remember it was people there.

Q. How big is the sidewalk, officer?

A. I don't know the measurements.

Q. Sorry?

A. I don't know the measurements.

Q. Can you give me an approximate measurement?

A. The sidewalk outside in front of this court building.

Q. It wasn't just Mr. Williams standing on the sidewalk that people had to walk around, actually it was a group of people, is that correct?

A. Say that again?

Q. Okay. Because if Mr. Williams had been standing on the sidewalk by himself, he would not have been impeding traffic, is that correct?

MS. LEATHERWOOD: Objection.

THE COURT: Overruled.

THE WITNESS: No.

THE COURT: How many people did you arrest, sir?

THE WITNESS: Your Honor, I can't remember.

THE COURT: What's a safe number?

THE WITNESS: At least three.

THE COURT: At least three?

THE WITNESS: Yes.

THE COURT: Thank you.

BY MS. NURMI:

Q. Office Fabian, do you often see people waiting by a bus stop on your patrol?

A. Yes.

Q. You see them standing in groups on the sidewalk?

A. Yes.

Q. Do you make it your business to arrest those people as they are waiting for the bus?

A. I make it my business to arrest individuals if they are out there on the corner selling C.D.S. and this person gave me a reasonable suspicion that's what he was involved in. He had no bus pass according to the property I had gotten form him.

At the conclusion of the hearing, the court denied appellant's motion to suppress. In response to defense counsel's comment that the court's interpretation of the ordinance was unreasonable, the court advised her, "Take it up to the Court of Appeals."

After appellant's suppression motion was denied, the prosecuting attorney brought to the court's attention a problem concerning the availability of a witness to appear on the scheduled trial date. Because that witness was the chemist

who had tested the residue in the glass pipe seized from appellant after he was arrested, the prosecuting attorney nol prossed the charge of possession of cocaine. The colloquy between the court and counsel was as follows:

MS. LEATHERWOOD: The State has a preliminary. The Chemist in this case, Ms. Stewart, will not be available until Monday and so, in an effort to further this case and not hold this case up, the State would not request a postponement, but nol pros Count 1, which is the C.D.S. possession.

THE COURT: There is an easier way of proceeding than nol prossing it. Why don't we just take her deposition now and we can play that back to the jury tomorrow?

MS. LEATHERWOOD: Okay, Your Honor.

THE COURT: Ms. Nurmi?

MS. NURMI: I would respectfully—

THE COURT: You will have an opportunity to cross-examine the witness live here. What difference would it make to delay it if the jury can see it on videotape?

MS. NURMI: I would rather have the jury have her testify live.

THE COURT: All right. Ms. Stewart, what is the reason that you are unavailable between now and Monday?

MS. STEWART: I will have surgery tomorrow.

THE COURT: Because the witness will have surgery, I find she is unavailable on that date pursuant to Maryland Rule 4–261. Which says, under subsection B: "In the circuit court, the parties may agree without an order of the court to take a deposition of a witness subject to the right of the witness to move for protective order under subsection G of this rule. Without agreement, the court, on motion of a party, may order the testimony to be taken by deposition if satisfied the witness may be unable to attend the trial or hearing that the testimony may be material and taking the deposition is necessary to prevent a failure of justice."

Of course the defendant, under Subsection F, has to be present.

H, use, 1, Substantive Evidence: "At a hearing or trial, all or part of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the court finds that the witness, a, is dead or b, is unable to attend or testify because of age. Mental incapacity, sickness or infirmity or c, if present but refuses to testify and cannot be compelled to testify or d, is absent from hearing or trial and that the party offered in deposition has been unable to secure the witness's attendance by subpoena or other reasonable means unless the attendance is procured by the parties offering the deposition."

Then they talk about impeachment, [partial use] and then 4: "Objection to admissibility. Subject to Rules 4-2-412E, 2-415G and H, 2-416G and 2-417C, an objection may be made at the hearing or trial of receiving the evidence, all or part of a deposition for any reason that can require the exclusion of the evidence and the witness who was then present and testifying."

And then the case law under—basically, the issue is unable to attend because of—attend the trial in b.

(WHEREUPON, THERE WAS A PAUSE IN THE PROCEEDINGS).

THE COURT: And unable to attend because of age, mental capacity, sickness and infirmity under H-1.

In Earp versus State, 76 Maryland App., 433 1988[76 Md. App. 433, 545 A.2d 698 (1988)], affirmed, 319 Maryland 156, 1990[319 Md. 156, 571 A.2d 1227 (1990)], the Court of Appeals said: "The determination of whether the testimony of a witness who had viewed copies of a videotape deposition has been rehearsed, thereby creating artificial harm as a matter of credibility subject to attack on cross-examination not subject to admissibility, showing a taped deposition by prosecutor of a witness prior to trial did not violate Rule 4-321. "Now Rule 5-316 which deals with the exclusion of witnesses from a court proceeding and it's not applicable." Had the defendant wished to limit the showing of deposition by court order, he could have sought a protective order pursuant to Section G5 of this rule.

MS. NURMI: Your Honor, if I can interrupt, it is my understanding the State has nol prossed the possession count.

THE COURT: Did you intend to finally nolle prosqui or was it conditioned don mistake?

MS. LEATHERWOOD: I withdraw it.

THE COURT: I didn't think you meant to nol pros.

MS. NURMI: I do not believe she can withdraw the nol pros. If she wants to recharge, she can.

The court declared that the nolle prosequi was conditional, in that it was based on the State's mistaken belief that the chemist would have to appear in court to testify. The court then ruled that, because the nolle prosequi was conditional, it could be withdrawn.

### DISCUSSION

Appellant, accepting the trial court's suggestion, has brought to this Court his contention that the ordinance as interpreted by the lower court in this case is unconstitutional. We shall not address that issue, however.

■ It is a general principle that courts should not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground. *Professional Staff Nurses Ass'n v. Dimensions Health Corporation,* 346 Md. 132, 138, 695 A.2d 158 (1997); *State v. Lancaster,* 332 Md. 385, 404 n. 13, 631 A.2d 453 (1993) (citing numerous cases). We can and, therefore, will dispose of this case on non-constitutional grounds.

### I

■ We shall first dispose of appellant's conviction and sentence, under Count 1 of the indictment, for possession of cocaine, that is, the residue in his glass pipe. The State had nol prossed that count. Maryland Rule 4–247(a) provides that the State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. The State has an absolute right, without

court approval, to enter a nolle prosequi to charges, provided it does so in open court. *Gray v. State*, 38 Md.App. 343, 357, 380 A.2d 1071 (1977), *cert. denied*, 282 Md. 732 (1978). The nol pros of a charging document or of a count is a final disposition of that charging document or count, and there can be no further prosecution under the nol prossed charging document or count. *State v. Moulden*, 292 Md. 666, 673, 441 A.2d 699 (1982). "The only 'exception' to this principle is when the nolle prosequi is subject to a condition and the condition is not met." *Id.*, n. 6.

The trial judge "authorized" or "suggested" withdrawal of the nolle prosequi on the theory that it was conditional. He was wrong. There was nothing conditional about the nolle prosequi; that the prosecuting attorney might not have nol prossed Count 1 if she had thought of presenting the witness' testimony by deposition did not make the nolle prosequi conditional. It was final, absolute, complete; there were no conditions attached. The court erred in subjecting appellant to trial and conviction on a charge that no longer existed.

## II

We turn now to appellant's contention that the lower court erred in denying his motion to suppress the pipe seized from his pocket in the search incident to his arrest. He asserts that his arrest for loitering was illegal because Officer Fabian lacked probable cause to arrest him. We agree.

Baltimore City's loitering statute (Baltimore City Code, Art. 19, § 25–1), defines "loiter" as "to stand around in a public place and engage in conduct prohibited under this law." The conduct prohibited under the ordinance, as applicable to this case, is "to loiter ... in such manner as to interfere with, impede, or hinder the free passage of pedestrian ... traffic." "Public place" includes a "sidewalk." Therefore, "loiter" means to loiter in a certain manner in a public place. The proscribed conduct, therefore, is loitering, that is, standing or remaining on a sidewalk *and* loitering *and* impeding pedestrian traffic. A statute that defines a proscribed act in terms of

itself presents a problem in interpretation. Nevertheless, no matter how the ordinance language is parsed, the definition of "loiter" as used therein is at variance with the normal meaning of the word.

Webster's Third new International Dictionary of the English Language, Unabridged (copyright 1976), published by G.E. Merriam Company, defines the verb "loiter" as follows:

(1) To interrupt or delay an activity or errand or a journey, with, or as if with, aimless idle stops and pauses and purposeless distractions; fritter away time in the course of doing something or proceeding somewhere; take more time than is usual or necessary; be markedly or unduly slow in doing something or going somewhere; dawdle, linger.

(2)(a): to remain in or near a place in an idle or apparently idle manner; hang around aimlessly or as if aimlessly.

(b) to be unnecessarily slow in leaving; fitfully put off leaving; hang back; stay around without real necessity; lag behind.

The Oxford English Dictionary, 2nd Edition, defines "loiter" in somewhat different terms but with the same general meaning:

1.(a) In early use: To idle, waste one's time in idleness. Now with more specific meaning: To linger indolently on the way when sent on an errand or when making a journey; to linger idly about a place; to waste time when engaged in some particular task, to dawdle. (b) To travel or proceed indolently and with frequent pauses.

Webster's New World Dictionary, College Edition, understandably contains an abridged definition: "To spend time idly, linger, dawdle."

The evidence adduced at the suppression hearing was to the effect that appellant was standing at a designated bus stop. He said he was waiting for a bus; the arresting officer could not refute that statement. To the presiding judge, it made no difference whether appellant was waiting for a bus—if he was

impeding pedestrian traffic, he was loitering and could be required to move away. Officer Fabian conceded that appellant alone could not impede pedestrian traffic merely by standing on the sidewalk. There were, however, other people standing around, and, together with appellant, they impeded the movement of pedestrians. There was no evidence from which an inference could be drawn that appellant was in any way associated with or a part of the group of other persons who were impeding pedestrian traffic. Nor was there any evidence even remotely supporting an inference of scienter, *i.e.,* an intent to impede pedestrian traffic. In short, the evidence showed that appellant, with lawful intention, was standing in a place designated by public officials as the proper place to stand while waiting for a bus. Nevertheless, Officer Fabian, on an unwarranted assumption, concluded that appellant's mere presence in the vicinity of others who may very well have been aimlessly or purposelessly standing about or "hanging out" in such a manner as to interfere with pedestrian traffic constituted unlawful loitering. He told appellant, along with others, that "if they didn't move on, they would be arrested."

It does seem rather anomalous that, as interpreted by Officer Fabian and the motion hearing judge, a person who, with lawful purpose—and therefore not loitering within the normal meaning of that word—is waiting for a bus, could be forced to move away from a place specifically designated for him to stand, in order to accommodate one who is really loitering, that is, strolling along aimlessly, purposelessly, frittering away time. That observation, however, would be more pertinent to a discussion of whether, so interpreted, the ordinance would be constitutional. Accordingly, we pass from it and proceed to the actual basis for appellant's arrest.

Officer Fabian did not tell appellant and the other people standing on the sidewalk that they were violating any law, or that they were obstructing or impeding pedestrian traffic. He merely told them that they were "loitering," which, in the normal meaning of that word, appellant was not

doing. Moreover, according to Justice Steven's opinion in *City of Chicago v. Morales,* 527 U.S. 41, 53, 119 S.Ct. 1849, 1857, 144 L.Ed.2d 67, 78, "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment."

The ordinance does not authorize the arrest of anyone for loitering, even as that term is defined in the ordinance. Instead, it specifically provides, in subsection (c)(1) of § 25–1 of subtitled 25 "Loitering—General" of Article 19 of the Baltimore City Code:

> No person shall be charged with a violation of this section unless and until the arresting officer has first warned the person of the violation and the person has failed or refused to stop the violation.

Telling someone merely that he is "loitering" and that if he does not move on he will be arrested, as Officer Fabian testified he told appellant, does not adequately warn that person that he is in violation of a law, statute, or ordinance by loitering, *i.e.,* standing around in such a way as to impede traffic. Moreover, the ordinance does not authorize a police officer to order anyone, even a loiterer, to move away from the area. The officer may warn a *group of people* "loitering" in such a manner as to interfere with pedestrian traffic to cease violating the law prohibiting such interference (as noted above, even Officer Fabian conceded that one person alone cannot impede pedestrian traffic by standing on a sidewalk), and he may arrest anyone who thereafter "failed or refused to stop the violation." An officer cannot lawfully arrest anyone for refusing to obey an order to move on after he told that person, along with other individuals, "that they were loitering in a public place and if they didn't move on they would be arrested."

Apparently, Officer Fabian had confused some provisions of the "Loitering–General" Ordinance with provisions of the City's Ordinance prohibiting loitering in a certified drug free zone. Article 19, §§ 25–6 and 25–7 of the Baltimore City Code. The latter, adopted to aid enforcement of the Controlled

Dangerous Substances Law enacted by the General Assembly of Maryland, authorizes a police officer who suspects that a person is loitering within the meaning of the ordinance, that is, loitering within a certified drug free zone "for the purpose of engaging in drug related activity," to "request" that person to "leave the premises." Only if the person so ordered or "requested" to move on fails to do so may he be arrested. In this case, Officer Fabian, who said he had a reasonable suspicion that appellant was "out there on the corner selling C.D.S.," ordered him to move on, as if the officer were enforcing the drug free zone anti-loitering ordinance, Art. 19, §§ 25–6 and 25–7, rather than the "Loitering General" Ordinance, Art. 19, § 25–1. There was no evidence that the 2700 block of West Lanvale Street is within a certified drug free zone.

We hold that appellant was not adequately warned that he was violating a law by loitering and impeding pedestrian traffic, and that he was arrested for failing to obey an unlawful demand that he move away from the bus stop. The arrest, therefore, was illegal, and the search of appellant's person and clothing incident to his arrest violated his Fourth Amendment protection against unreasonable searches and seizures. The lower court erred in denying appellant's motion to suppress the evidence seized as a result of the unlawful search, and the conviction for possession of paraphernalia must be reversed.

## III

For the reasons set forth in Section II above, we hold that there was insufficient evidence to support appellant's conviction for violation of § 25–1 of Article 19 of the Baltimore City Code.

**JUDGMENTS REVERSED.**

**COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**